Maurice B. VerStandig, Esq.
Nevada Bar No. 15346
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
(301) 444-4600
mac@mbvesq.com
*Special Counsel for the Virginia Department of Social Services, Division of Child Support Enforcement, Anne Prentice and Sue Ann Bullard*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No. 20-13238-mkn |
| RAJ MARNI, | Chapter 7 |
| Debtor. | |
| RAJ MARNI, | Adv. No. 26-01060-mkn |
| Plaintiff, | Hearing Date: July 1, 2026 |
| | Hearing Time: 9:30 am |
| v. | |
| ANNE PRENTICE, ESQ., INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS ASSISTANT ATTORNEY GENERAL, VIRGINIA ATTORNEY GENERAL'S OFFICE; SUE ANN BULLARD, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS SUPPORT ENFORCEMENT SPECIALIST, DIVISION OF CHILD SUPPORT ENFORCEMENT, VIRGINIA DEPARTMENT OF SOCIAL SERVICE; VIRGINIA DIVISION OF CHILD SUPPORT ENFORCEMENT (DCSE), DEPARTMENT OF SOCIAL SERVICES, COMMONWEALTH OF VIRGINIA, and KSENIJA TRDIC, INDIVIDUALLY | <u>Scheduling Conference</u><br>Date: September 10, 2026<br>Time: 10:00 am |
| Defendants. | |

1

## MOTION TO DISMISS COMPLAINT WITH PREJUDICE

Come now the Virginia Department of Social Services, Division of Child Support Enforcement ("DCSE"), Anne Prentice ("Ms. Prentice") and Sue Ann Bullard ("Ms. Bullard") (collectively, the "Virginia Defendants"), by and through undersigned special counsel, pursuant to Federal Rule of Bankruptcy Procedure 7012, and move to dismiss—with prejudice—the complaint (the "Complaint"), ECF No. 1, filed by Raj Marni (the "Plaintiff"), and in support thereof state as follows:

### I.   Introduction

This matter merits dismissal—with prejudice—because the Complaint is a collateral attack on a domestic relations order (the "State Court Order") entered by the Circuit Court of Loudoun County, Virginia (the "State Court"). The Plaintiff takes issue with his objections to the State Court Order having been overruled and seeks to relitigate the merits of the same objections in this case, urging the State Court erred in computing the child support, spousal support, and other undischarged obligations of the Plaintiff to his children and former spouse. Yet such an effort is barred by (i) the doctrine announced by the Supreme Court in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (the "*Rooker-Feldman* doctrine"), (ii) the full faith and credit doctrine, and (iii) the domestic relations exception to federal jurisdiction.

The Plaintiff is not the first—and, almost assuredly, will not be the last—debtor to occasion an unfavorable ruling in a domestic relations matter and then seek recourse before a separate trial court. Domestic relations cases, in particular, often invite both personal and economic tolls that lead to emotionally-charged discord on the part of a non-prevailing party. Yet while appellate recourse is frequently available, review by a sister trial court is necessarily

unavailable. In this case, however, such collateral trial court review is precisely what is substantively sought by the Plaintiff.

Given that the claims asserted in the Complaint are barred as a matter of law, dismissal of this suit is appropriately entered with prejudice. The Plaintiff has already compelled a sovereign state to engage outside counsel and expend taxpayer resources bringing the instant motion; neither equity nor law support permitting the further entrenchment of this suit through amendment.

Additionally, the Plaintiff has failed to serve the Complaint and summonses upon any of the Virginia Defendants in a manner that comports with governing law. Such is, independently, cause for dismissal of this suit.[1]

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Complaint be dismissed with prejudice.

**II.    Standard: Rule 12(b)(6)**

The Federal Rules of Civil Procedure permit a party to seek dismissal for, *inter alia*, a pleading's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). *See also* Fed. R. Bankr. P. 7012(b) (making Federal Rule of Civil Procedure 12(b) applicable in adversary proceedings).

To survive a motion to dismiss for failure to state a claim for relief, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), as exemplified by "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[1] This defect in service is raised alongside substantive arguments insofar as special appearances are no longer required to raise jurisdictional defects in the Ninth Circuit. *See Republic Int'l Corp. v. Amco Eng'rs, Inc.*, 516 F.2d 161, 164 (9th Cir. 1975).

In assessing a complaint's allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). *See also USAnovic v. Americana, L.L.C.*, 775 F. Supp. 3d 1133, 1139 (D. Nev. 2025) ("The Ninth Circuit, in elaborating on the pleading standard described in *Twombly* and *Iqbal*, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are 'plausibly suggestive of a claim entitling the plaintiff to relief.'") (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)); *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (". . . conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.") (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

In evaluating a pleading in connection with a motion to dismiss, courts are permitted to consider ". . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)). These include "documents that are attached to the complaint." *Herrera v. Cty. of L.A.*, 482 F. App'x 263, 264 n.1 (9th Cir. 2012) (citing *Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001)).

**III.    Relevant Factual Allegations**

The Complaint—some 71 pages long, with 147 substantive paragraphs (alongside myriad sub-paragraphs)—does not necessarily read as a "a short and plain statement." Fed. R. Civ. P. 8(a). However, assuming the truthfulness of the plausible allegations therein, for the sole and limited purpose of this motion, *see Spletstoser v. Hyten*, 44 F.4th 938, 954 (9th Cir. 2022), and considering documents incorporated into the pleading, the Complaint pertinently asserts:

1.    The Plaintiff received a chapter 7 discharge in December 2020. *See* Complaint, ECF No. 1, at ¶ 28.

4

2. Prior to seeking bankruptcy relief, the Plaintiff was married to Ksenija Trdic ("Ms. Trdic"), with a divorce being finalized in June 2017. *Id.* at ¶ 40.

3. Following her divorce from the Plaintiff, Ms. Trdic sought chapter 7 protection in the Eastern District of Virginia, being granted a discharge in June 2019. *Id.* at ¶ 43.

4. Pursuant to the terms of a divorce decree, the Plaintiff is obligated to pay Ms. Trdic child support alongside spousal support. *See* Order of January 9, 2026, ECF No. 1-7.

5. The State Court held a hearing, on December 3, 2025, to determine the sum and nature of the Plaintiff's child and spousal support arrearages. *Id.*

6. The Plaintiff was present at the foregoing hearing and therein argued part or all of his at-issue obligations had been discharged in bankruptcy. *See* Complaint, ECF No. 1, at ¶ 106.

7. The State Court also received testimony from Ms. Trdic at the December 3, 2025 hearing. *Id.* at ¶ 107.

8. The State Court, following the aforesaid hearing, entered an order—on January 9, 2026—finding the Plaintiff, as of November 30, 2025, to owe (i) $63,493.98 in child support; (ii) $441,185.70 in spousal support; (iii) $214,532.54 in debts to Ms. Trdic; (iv) $63,356.63 in support to his daughter; and (v) $17,850.88 in support to his son. *Id.*

9. The Plaintiff objected to entry of the State Court Order. *Id.* at p. 4 ("The Court has reviewed Mr. Marni's 'Objection to Proposed Order. . .' regarding this order, filed 12/29/25, and the court is not persuaded that this order should not be entered.") (ellipses in original).

10. As a result of the State Court Order, the Plaintiff saw his passport revoked, *see* Complaint, ECF No. 1, at ¶¶ 13, 97 (albeit with some immaterial ambiguity as to whether the passport is being held or has actually been revoked), pursuant to a statute directing the United States Department of State to do so when an individual owes more than $2,500.00 in certified

child support arrears, *id.* at ¶ 97.[2] The State Court Order expressly directs the Plaintiff to surrender his passport to the clerk of the court. *See* State Court Order, ECF No. 1-7, at p. 3.[3]

11.     The Plaintiff maintains that DCSE, alongside Ms. Bullard and Ms. Prentice— employees of the Commonwealth of Virginia, *see* Complaint, ECF No. 1, at ¶¶ 32, 35—are civilly liable for actions taken in connection with the foregoing hearing and for actions taken in connection with efforts to collect the child and spousal support adjudicated by the State Court to be due and owing, *id.*, *passim*.

**IV.     Argument: The Complaint Fails to State a Claim Upon Which Relief Can Be Granted**

**a.   Recovery is Barred by the *Rooker-Feldman* Doctrine**

The Plaintiff's core grievance—against the Virginia Defendants—is that the State Court erred in assessing certain monies to form a valid part of a child and/or spousal support obligation, and the Virginia Defendants should be held liable for their role in the State Court proceedings as well as for not taking actions to support arguments the Plaintiff unavailingly made in connection with those proceedings. While this theory wraps some 71 pages of text and assumes the form of various esoteric causes of action (including a claim putatively premised upon a violation of Fourteenth Amendment rights), the whole of the Complaint is inextricably tied to the State Court Order. The harms of which the Plaintiff purports to suffer are harms stemming from the State

---

[2] The Complaint cites to section 2714a of title 28 of the United States Code as furnishing the legal authority for a passport revocation where child support is delinquent. *See* Complaint, ECF No. 1, at ¶ 97. Upon review, however, that particular statutory citation appears to govern the revocation of passports for individuals with "seriously delinquent" tax debt, 28 U.S.C. § 2714a(e), as well as for individuals without a social security number, 28 U.S.C. § 2714a(f). It is unclear why the Plaintiff has cited to this code section, but such is also immaterial to the instant motion.

[3] Page citations are to the ECF page numbers, not those imprinted at the foot of the exhibit.

6

Court Order and the enforcement thereof; the ills the Plaintiff alleges the Virginia Defendants to have perpetrated are ills associated with the hearing preceding entry of the State Court Order and ills associated with declining to take actions to dissolve the State Court Order following entry. Under the *Rooker-Feldman* doctrine, however, this is not an appropriate tribunal for the airing of such grievances.

As this Honorable Court has observed, "[t]he Rooker-Feldman doctrine bars relief that 'would require the [federal court] to determine that the state court's decision was wrong and thus void.'" *Hotchkiss v. Rodriguez (In re Rodriguez)*, 2022 Bankr. LEXIS 2459, at *14 (Bankr. D. Nev. Aug. 30, 2022) (quoting *Henrichs v. Valley View Dev.*, 474 F.3d 609, 616 (9th Cir. 2007)). *See also Cogan v. Trabucco*, 114 F.4th 1054, 1064-65 (9th Cir. 2024) (". . . unlike res judicata, the *Rooker-Feldman* doctrine is not limited to claims that were actually decided by the state courts, but rather it precludes review of all 'state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.") (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 901 (9th Cir. 2003)).

The Ninth Circuit has clarified the *Rooker-Feldman* doctrine to be applicable even where, as here, a litigant suggests the underlying state court order to be constitutionally infirm: "Our case law makes clear that 'this doctrine applies even where the challenge to the state court decision involves federal constitutional issues,' including section 1983 claims. Furthermore, the doctrine applies to both final and interlocutory decisions from a state court." *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1142-43 (9th Cir. 2021) (quoting *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001) (citing *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986)); citing *Branson v. Nott*, 62 F.3d 287, 291 (9th Cir. 1995); *Napolitano*, 252 F.3d at 1030).

In application, the *Rooker-Feldman* doctrine renders a federal court (other than the Supreme Court) without jurisdiction to entertain suits that are ". . . [1] brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Searle v. Allen*, 148 F.4th 1121, 1128 (9th Cir. 2025) (quoting *Brown v. Duringer Law Grp. PLC,* 86 F.4th 1251, 1254 (9th Cir. 2023) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); citing *Miroth v. County of Trinity*, 136 F.4th 1141, 1148-51 (9th Cir. 2025)).

Here, the first prong of the *Searle* test is satisfied insofar as the Plaintiff is the "loser" under the State Court Order. As the Complaint makes clear, the Plaintiff fervently contested his child and spousal support obligations at a hearing, to no avail, and then formally objected to entry of the State Court Order. The Virginia trial court, in turn, found the Plaintiff to have significant domestic support—and divorce-centric—obligations, whilst also threatening the prospect of incarceration if the Plaintiff does not take certain steps. *See* State Court Order, ECF No. 1-7.

The second criterion is similarly satisfied insofar as this matter is premised upon injuries putatively occasioned by entry of the State Court Order. The Plaintiff expends a significant portion of the Complaint discussing his inability to undertake foreign travel for work because of the passport restrictions attendant to his owing delinquent child support. The whole of the alleged damages discussed in the Complaint concern monetary burdens occasioned by the State Court Order and/or a loss of earning opportunity occasioned by the State Court Order.

The temporal requirement of the third element of the *Rooker-Feldman* doctrine is similarly satisfied. The State Court Order was signed on January 9, 2026. *See* State Court Order, ECF No. 1-7. This adversary proceeding, in turn, was commenced on April 27, 2026. *See* Complaint, ECF No. 1. The State Court Order clearly precedes the filing of this action.

8

The final element of the *Searle* test is, too, satisfied insofar as this action invites this Honorable Court—a "unit" of the district court, 28 U.S.C. § 151, referred this matter by the district court, *see* 28 U.S.C. § 157(a), LR 1001, Special Order 48—to review and reject the judgment of the State Court. The gravamen of the Complaint is that the State Court erred in finding certain obligations to validly constitute spousal and/or child support obligations. The Plaintiff's success in this matter is dependent, *en toto*, upon this Honorable Court reviewing those findings of the State Court and rejecting the same findings following such review.

Unsurprisingly, the *Rooker-Feldman* doctrine is often invoked when parties aggrieved by state court domestic relations orders then seek redress in federal court. The United States District Court for the Eastern District of Virginia has affirmed a bankruptcy court holding, in a markedly similar circumstance, by noting, *inter alia*:

> Davy Jr. has a child support judgment against Appellant from proceedings in Prince George's County Court in the state of Maryland. While Appellant argues *Rooker-Feldman* should not apply because she is not in Bankruptcy Court litigating the same issues that she litigated in state court, the crux of Appellant's argument is that she is entitled to relief from the Bankruptcy Court because the state court erred in reaching its child support determination. Thus, in effect, Appellant is asking the Bankruptcy Court to review and reverse the decision of the Maryland state court. However, under *Rooker-Feldman*, "[l]ower federal courts cannot sit in direct review of final state court decisions." Accordingly, the Bankruptcy Court did not err in refusing to review the order entered by the state court.

*Davy v. Gorman*, 2023 U.S. Dist. LEXIS 118376, at *13 (E.D. Va. July 10, 2023) (quoting *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 229 (4th Cir. 1997)) (internal citations omitted). Other courts have held similarly. *See, e.g.*, *Woodroffe v. Waage*, 2018 U.S. Dist. LEXIS 217087, at *9 (M.D. Fla. Dec. 28, 2018) ("Appellant has not persuaded the Court that the Bankruptcy Court or this Court could alter his domestic support obligation. Indeed, doing so would implicate the *Rooker-Feldman* doctrine, which bars federal courts from reviewing claims that were raised,

or that could have been raised, and resolved by a state court judgment.") (citing *Redford v. Gwinnett Cty. Jud. Cir.*, 350 F. App'x 341, 344-45 (11th Cir. 2009)).

The United States District Court for the Eastern District of Michigan has confronted a debtor whose pre-petition divorce proceedings included the appointment of a receiver, with the parties being bound to split the fees of the receiver. *Moxon v. Findling (In re Moxon)*, 2006 U.S. Dist. LEXIS 14893, at *1 (E.D. Mich. Mar. 31, 2006). The state court divorce judgment called for the payment of child support "and decreed that if either party should file for bankruptcy, and that if it was determined that any obligation owed to the other party was dischargeable, then the unpaid amount would be automatically converted to non-dischargeable domestic support." *Id.* at *1-2. When the debtor then sought bankruptcy relief, the state court-appointed receiver filed a state court motion seeking fees for his efforts attempting to collect unpaid child support. *Id.* at *2. The state court agreed the receiver's fees, for attempting to collect child support, "were in the nature of support, and that the receiver incurred the fees in an attempt to collect support payments." *Id.* at *3.

The *Moxon* debtor then asked the bankruptcy court, overseeing his insolvency case, to find the receiver in contempt for violating the automatic stay. *Id.* When that motion was denied, the debtor filed a successive motion, this time seeking a finding that the receiver, the receiver's law firm, and the state court judge violated the automatic stay. *Id.* at *3-4. When that motion was, too, denied, the debtor appealed. *Id.* at *4. The district court, on appeal, held, *inter alia*:

> Regardless of whether the state court's ruling that found the receiver's fees non-dischargeable because they were in the nature of support was correct or not, the state court had jurisdiction to make that decision. An erroneous interpretation of the law does not divest a court of jurisdiction to make the erroneous decision. Therefore, because the state court had concurrent jurisdiction over areas of domestic support, the *Rooker-Feldman* doctrine bars collateral attack or appellate review of state court decisions, even if erroneous. If Appellant wishes to appeal the state court decision granting non-dischargeable status to the receiver's fees, he must do so in the state court system.

*Id.* at *12.

The instant case is markedly akin to *Moxon*, *Davy*, and *Woodroffe*: the Plaintiff—unhappy with a state court ruling in a domestic relations case—is asking this Honorable Court to exercise collateral review and find merit in arguments a state court judge has already found to be unavailing. Yet such is precisely the sort of review forbade by the *Rooker-Feldman* doctrine. And dismissal of this suit, with prejudice, is accordingly proper.

### b.  Recovery is Barred by the Full Faith and Credit Doctrine

Of close relation to the *Rooker-Feldman* doctrine is the full faith and credit doctrine. As a matter of both constitutional and statutory law, federal courts are to accord full faith and credit to the orders of sister state courts. In this case, the doctrine requires the State Court Order to be honored and not subject to collateral review or disruption.

The Constitution directs "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. Const., Art. IV, § 1. Heeding that directive, Congress, in turn, has enacted a statute providing, *inter alia*:

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.

Taken together, the constitutional and statutory provision create a prism whereby "in determining the collateral estoppel effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply that state's law of collateral estoppel." *Troutt v. Colo. W. Ins. Co.*, 246 F.3d 1150, 1156 n.1 (9th Cir. 2001) (quoting *Bugna v. McArthur (In re Bugna)*, 33 F.3d 1054, 1057 (9th Cir. 1994)). *See also Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995) ("The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute. . ."); *Adelphia Gateway, LLC v. Pa. Env't Hearing Bd.*, 62 F.4th 819, 825 (3d Cir. 2023) ("This 'requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.'") (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982); citing *Allen v. McCurry*, 449 U.S. 90, 96 (1980)).

In *Davy*, the debtor urged the Prince George's County Office of Child Support had committed "grave violations of Maryland law" in child support hearings, *Davy*, 2023 U.S. Dist. LEXIS 118376, at *5, and objected to a former spouse's child support claim, attaching documentation from various state court proceedings, *id.* at *6. The debtor attacked the validity of a child support order. *Id.* On appeal, the district court—after making the holding premised on the *Rooker-Feldman* doctrine that is cited above, *see, supra,* § IV(a)—noted the full faith and credit doctrine to also prohibit such conduct in bankruptcy cases:

> Moreover, state court judgments are also entitled to full faith and credit. While the *Rooker-Feldman* doctrine and full faith and credit are related doctrines, they are distinct sets of principles. Under the full faith and credit statute, the Bankruptcy Court must give "the same effect to the judgment as the rendering court would have given it." A state court judgement that is reversed or modified is not given full faith and credit.

*Davy*, 2023 U.S. Dist. LEXIS 118376, at *13 (citing 28 U.S.C. § 1738; *In re Keeler*, 273 B.R. 416, 421 (D. Md. 2002) (citing *GASH Associates v. Village of Rosemont, Illinois*, 995 F.2d 726, 728 (7th Cir.1993)); quoting *In re Heckert*, 272 F.3d 253, 259 (4th Cir. 2001)).

The similarities to *Davy* are notable, insofar as DCSE is—like the Prince George's County Office of Child Support—a government agency working to promote the enforcement of child support orders, while the other Virginia Defendants are individuals working to carry out the charge of that state agency. In *Davy*, the debtor decried that state court proceedings had been unlawful and unjust; here, the Debtor decries that proceedings before the State Court are unlawful and unjust. In *Davy*, the debtor sought to collaterally attack the state court order(s) asserted to be wrongful; here, the Debtor is endeavoring to collaterally attack the State Court Order as wrongful. And, just as the full faith and credit doctrine prohibited the entertainment of such contentions in *Davy*, the same doctrine is similarly preclusive in the instant case.

**c. The Domestic Relations Exception Prohibits Review of the State Court Order**

Even putting aside the *Rooker-Feldman* doctrine and full faith and credit doctrine, there is an added reason this Honorable Court ought not entertain the Plaintiff's invitation to review the merits of a state court child and spousal support order: such is forbade by the so-called "domestic relations exception" to federal jurisdiction. For more than 165 years, federal courts have carefully avoided wading into the waters of domestic relations matters reserved to state courts. With time, the jurisdictional exception has become increasingly well defined.

In 1859, the Supreme Court "disclaim[ed] altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery or as an incident to divorce *a vinculo,* or to one from bed and board." *Barber v. Barber*, 62 U.S. (21 How.) 582, 584 (1859). Seemingly ever since, this disclaimer has been honored.

Over more than a century and a half, the parameters of the domestic relations exception have become better defined, with the Supreme Court holding—as recently as 1992—that the exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees. Given the long passage of time without any expression of congressional dissatisfaction, we have no trouble today reaffirming the validity of the exception as it pertains to divorce and alimony decrees and child custody orders." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992).

In applying *Ankenbrandt*, the Ninth Circuit directs courts to ask "whether the plaintiff seeks an issuance **or modification** of a divorce, alimony, or child-custody decree." *Bailey v. Macfarland*, 5 F.4th 1092, 1096 (9th Cir. 2021) (emphasis added). Critically, *Bailey* is careful to note that while Supreme Court precedent speaks largely to the "issuance" of decrees, the domestic relations exception necessarily also extends to any modification thereof because "[m]odification of a divorce decree is analogous to the issuance of a divorce decree." *Id.* at 1096 (quoting *Matusow v. Trans-County Title Agency*, LLC, 545 F.3d 241, 246 (3d Cir. 2008)). Moreover, the Ninth Circuit has observed that "[a] plaintiff may not evade the exception through artful pleading. We 'look to the reality of what is going on' to ensure that the plaintiff is not 'cloak[ing]' a prayer for relief on the decree 'in the trappings of another type of claim.'" *Bailey*, 5 F.4th at 1096 (quoting *Irish v. Irish*, 842 F.3d 736, 742 (1st Cir. 2016)).

The Plaintiff in this case essentially seeks modification of a child and spousal support order. While the Complaint, no doubt, endeavors to avoid the clarity of this reality through "artful pleading," the Plaintiff's underlying thesis remains clear: the State Court Order is in error and should be rectified, in substance, by this Honorable Court. If the propriety of the State Court Order is assumed, the Complaint is left with no fodder to support any cause of action.

Yet, under the domestic relations exception, this Honorable Court is without jurisdiction to modify an award of child and/or spousal support in the first instance. Such well informs the

14

exclusion of these matters from the automatic stay. *See* 11 U.S.C. § 362(b)(2). The domestic relations exception also compliments the holdings of sister courts that indicate state courts enjoy concurrent jurisdiction to determine the impact of bankruptcy proceedings upon marital relations disputes and the obligations flowing therefrom. *See Rugiero v. Dinardo (In re Rugiero)*, 2011 U.S. Dist. LEXIS 137931, at *9 (E.D. Mich. Nov. 30, 2011) ("Because an exception to the automatic stay applied, the state court had jurisdiction to determine whether the attorney fee debt at issue in Rugiero's custody case was dischargeable in bankruptcy.  Additionally, since the state court had jurisdiction to decide the matter, the bankruptcy court correctly found that the *Rooker-Feldman* doctrine prevented it from reviewing the state court's decision regarding the dischargeablity of the debt.") (citing *Chao v. Hospital Staffing Services, Inc.*, 270 F.3d 374, 383 (6th Cir. 2001); *In re Moxon*, 2006 U.S. Dist. LEXIS 14893 (E.D. Mich. Mar. 31, 2006); *Hutcherson v. Lauderdale County, Tennessee*, 326 F.3d 747, 755-56 (6th Cir. 2003)).

Bankruptcy courts, no doubt, handle a broad and diverse array of issues. Whether in the manner of hearing and deciding adversary proceedings through the entry of final orders on core matters, or in the manner of issuing reports and recommendations on non-core matters, the eclectic nature of a bankruptcy court's docket extends well beyond the inner-workings of title 11 of the United States Code. Yet certain subject matters remain outside even that broad jurisdictional swath and, just as district courts are forbade from considering domestic relations disputes or modifying the decrees entered in such disputes, so too are bankruptcy courts forbade when hearing cases referred by district courts.

### d.  The Complaint Suffers from Independent Pleading Deficiencies

Insofar as this motion is largely devoted to a discussion of the macroscopic issues that preclude entertainment of this case, the Plaintiff's adherence, *vel non*, to pleading the proper elements of each cause of action is not a focal point. However, a few fleeting issues merit mention.

Count V of the Complaint seeks a declaration the Plaintiff's discharge covers "all non-support property settlement obligations. . ." *See* Complaint, ECF No. 1, at ¶ 142(a). This, however, is a naked misstatement of bankruptcy law, insofar as a chapter 7 discharge does *not* include debts stemming from a divorce decree. *See* 11 U.S.C. § 523(a) ("A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt. . . (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit. . .").

Indeed, while the Plaintiff appears to understand his child support obligations have not been discharged, *see* Complaint, ECF No. 1, at ¶ 48, he equally appears to misapprehend the reach of his discharge to other obligations flowing from a divorce decree, *id.* at ¶ 47 ("Among the debts discharged were property settlement obligations arising from Debtor's February 8, 2016, Property Settlement Agreement with Defendant Trdic.") (internal citation omitted). While such obligations may be dischargeable under chapter 13, they are not dischargeable under chapter 7. *See Dudley v. Simmons (In re Dudley)*, 2014 Bankr. LEXIS 781, at *13 n.4 (B.A.P. 9th Cir. Feb. 26, 2014) ("Dudley obviously did not want his case converted to chapter 7 because a chapter 7 discharge would be of no practical use to him. Most of the debt he owed to Simmons was non-support, divorce-related debt, which is not dischargeable in chapter 7 cases but is dischargeable in chapter 13.") (citing 11 U.S.C. §§ 523(a)(15), 1328(a)(2)).

This misapprehension appears to extend well beyond the contours of count V and the aforementioned paragraphs of the Complaint. To some degree, the whole of the Plaintiff's theory—as apparently espoused before the State Court—is founded upon an objectively flawed construction of the discharge he has received. And while the Virginia Defendants affirmatively

16

decline to reach the merits of the State Court Order herein, for the reasons expounded upon above, *see, supra*, §§ IV(a-c), it does bear notation that the faultiness of the Plaintiff's premise is objectively manifest.

Count VI of the Complaint is for "injunctive relief." *See* Complaint, ECF No. 1, at 62:12. This is not a cause of action. *See, e.g.*, *Linco Inc. v. Beauty Memory (In re Eachpole, Inc.)*, 2025 Bankr. LEXIS 211, at *312 (Bankr. D. Nev. Jan. 24, 2025) ("Injunctive relief is a remedy, not a substantive claim."); *Evig, LLC v. Natures Nutra Co.*, 685 F. Supp. 3d 991, 996 (D. Nev. 2023) ("As to the injunctive relief claim, injunctive relief is not an independent, free-standing cause of action.").

Equally, count II is for "civil contempt." This is also not a cause of action. *See, e.g.*, *Enodis Corp. v. Emplrs. Ins. (In re Consol. Indus. Corp.)*, 360 F.3d 712, 716 (7th Cir. 2004) ("As an initial matter, an adversary proceeding is not the proper vehicle to present a contempt claim, as civil contempt is a method of enforcing a court order, not an independent cause of action.") (citing *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993)).

Count III, meanwhile, is a section 1983 claim for violation of the Fourteenth Amendment, premised upon a deprivation of the Plaintiff's "a constitutionally protected liberty interest in his right to international travel." Complaint, ECF No. 1, at ¶ 126. There does not, however, exist a Fourteenth Amendment "right" to international travel. *See* U.S. Const. Amend. 14, *passim*. And the Supreme Court has made clear that "[t]he constitutional right of interstate travel is virtually unqualified. By contrast the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment." *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978) (quoting *Califano v. Torres*, 435 U.S. 1, 4 n.6 (1978) (citing *United States* v. *Guest*, 383 U.S. 745, 757-758 (1966); *Griffin* v. *Breckenridge*, 403 U.S. 88, 105-106 (1971)). As recently as last week, the Sixth Circuit has reaffirmed the absence of a

constitutional right to hold a passport. *Cortez v. Rubio*, 2026 U.S. App. LEXIS 14185, at *11 (5th Cir. May 18, 2026).

More pointedly, however, the denial of a passport to those who owe child support is a byproduct of Congress providing "federal funds to help the states collect child support" and, in turn, requiring "that there be a state plan for child support which must include a 'procedure for certifying to the Secretary . . . determinations that individuals owe arrearages of child support in an amount exceeding $ 5,000." *Eunique v. Powell*, 302 F.3d 971, 972 (9th Cir. 2002) (citing 42 U.S.C. 654(31)). When such a passport denial exists, the aggrieved individual is entitled to "request a hearing to review the basis for the denial, revocation, or cancellation, provided that the Department receives such a request, in writing, from such person or his or her attorney within 60 days of his or her receipt of the notice of the denial, revocation, or cancellation." 22 C.F.R. § 51.70.

So, to whatever extent the Plaintiff wished to contest his passport denial, the remedy was for him to seek a hearing before the United States Department of State or to appeal the State Court Order to the extent so permissible. Suing the Virginia Defendants, who merely abided by the rigors of federal law as applied to the orders of the State Court, is not the legally-contemplated recourse to be engaged upon receipt of a passport denial. And such assuredly does not rise to the level of a constitutional deprivation sufficient to inform a section 1983 claim.

**V.      Argument: The Plaintiff Has Failed to Validly Perfect Service**

Finally, while dismissal of this suit is appropriately entered with prejudice, for each of the foregoing reasons, one additional defect merits notation: the Plaintiff has failed to properly effectuate service of process and has cast a false oath in each of the certificates of service docketed in this case. By acting as his own process server, the Plaintiff has utilized the services of the one adult person (aside from the defendants to this suit) not legally qualified to effectuate service.

Under Federal Rule of Civil Procedure 12(b)(4), made applicable by Federal Rule of Bankruptcy Procedure 7012(b), this is an independent ground for dismissal of the instant suit.

Applicable rules make plain that "[a]ny person who is at least 18 years old **and not a party** may serve a summons and complaint under Fed. R. Civ. P. 4(e)–(j)." Fed. R. Bankr. P. 7004(a)(3) (emphasis added).[4] Courts, in turn, have made clear that a plaintiff in an action cannot serve as her or his own process server. *See, e.g.*, *Lane v. Medford Or. City Att'y's Office*, 2025 U.S. Dist. LEXIS 214305, at *5 (D. Or. Oct. 29, 2025) (". . . courts have consistently held that 'a party cannot themselves effectuate service[.]'") (quoting *Boose v. Musk*, 2025 U.S. Dist. LEXIS 127353, 2025 WL 1836652, at *2 (N.D. Cal. July 3, 2025) (citing *Smith v. Tempe Honda*, 2010 U.S. Dist. LEXIS 160073, 2010 WL 11627813, at *3 (D. Ariz. Mar. 31, 2010))); *Daniels v. Newrez LLC*, 2025 U.S. Dist. LEXIS 169520, at *4-5 (D. Kan. May 12, 2025) ("Plaintiffs are parties and therefore cannot serve the summons and Complaint on Defendants."); *Davis v. United States Dep't of the Treasury*, 2020 U.S. Dist. LEXIS 87337, at *4 (M.D. La. May 19, 2020) ("Thus, a plaintiff—even one representing himself—cannot serve a summons and complaint.") (citing Fed. R. Civ. P. 4(c)(2); *Shabazz v. City of Houston*, 515 Fed. Appx. 263 (5th Cir. 2013); *Constien v. United States*, 628 F.3d 1207, 1213-14 (10th Cir. 2010)).

Indeed, as explained by the United States Court of Appeals for the Tenth Circuit, in *Constien*:

> Even when service is effected by use of the mail, only a nonparty can place the summons and complaint in the mail. Although one could question the wisdom of this requirement, the rule contains no mailing exception to the nonparty requirement for service. And the limited history surrounding the relevant rules provisions confirms this reading.

---

[4] Additionally, service by mail is permitted in adversary proceedings. Fed. R. Bankr. P. 7004(b).

*Constien*, 628 F.3d at 1213-14 (citing 4B Charles Alan Wright & Arthur R. Miller, Federal Procedure & Practice § 1106 n.15 (3d ed. 2002)).

Here, the Plaintiff appears to have acted as his own process server, indicating—on each return of service—that he is the individual who placed the correlative complaint and summons in the mails. *See* Returns of Service, ECF Nos. 4-7. In so doing, the Plaintiff expressly certified—under "penalty of perjury"—that he is "not a party to the matter concerning which service of process was made." *Id.*

Transparently, the Plaintiff *is* a party to this adversary proceeding. Service of process—much like the foregoing oath ascribed by the Plaintiff—is accordingly improper.

**VI.    Conclusion**

WHEREFORE, the Virginia Defendants respectfully pray this Honorable Court (i) dismiss the above-captioned matter, as against the Virginia Defendants, with prejudice and without leave to amend; and (ii) afford such other and further relief as may be just and proper.

Dated: May 27, 2026                    Respectfully submitted

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Nevada Bar No. 15346
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
(301) 444-4600
mac@mbvesq.com
*Special Counsel for the Virginia Department of Social Services, Division of Child Support Enforcement, Anne Prentice and Sue Ann Bullard*

20

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2026, the foregoing motion was filed using the CM/ECF system, which served a NEF on all parties receiving such service in this case. I further certify that a true and accurate copy of the foregoing motion is being served—of even date—by first class mail, postage prepaid, upon (i) Raj Marni, 17595 Harvard Avenue, C 4009, Irvine, CA 92612; and (ii) Ksenija Trdic, 20725 Wood Quay Drive, Unit 469, Sterling, VA 20166.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

21