# EXHIBIT -  A

**NOTE ON DOCUMENT LENGTH**: For the sake of brevity and to reduce the volume of the record, the attached exhibits contain only the relevant excerpts of the larger documents. Full versions of these records are available and will be produced upon request.

# WORKSHEET

**DCSE CASE #**    IV-D # 0005005576

| MTH/YR | TOTAL PAID | OBLIGATION CHLD | OBLIGATION SPSL | AMOUNT PAID - DCSE CHLD | AMOUNT PAID - DCSE SPSL | AMOUNT PAID - CP/CREDIT CHLD | AMOUNT PAID - CP/CREDIT SPSL | MONTHLY CHLD | ARREARS CHLD | MONTHLY INTEREST CHLD | BALANCE INTEREST CHLD | MONTHLY SPSL | ARREARS SPSL | MONTHLY INTEREST SPSL | BALANCE INTEREST SPSL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ARREARS 2.1.2022 | | $86,557.09 | $255,383.15 | | | | | $0.00 | $86,557.09 | | | $0.00 | $255,383.15 | | $0.00 |
| Feb-22 | $5,000.00 | 0.00 | 5360.39 | 0.00 | 0.00 | 0.00 | 5000.00 | $0.00 | $86,557.09 | | $0.00 | $360.39 | $255,743.54 | | $0.00 |
| Mar-22 | $2,500.00 | 0.00 | 5360.39 | 0.00 | 0.00 | 0.00 | 2500.00 | $0.00 | $86,557.09 | $432.78 | $432.78 | $2,860.39 | $258,603.93 | $1,276.91 | $1,276.91 |
| Apr-22 | $0.00 | 0.00 | 5360.39 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 | $86,557.09 | $432.78 | $865.56 | $5,360.39 | $263,964.32 | $1,278.71 | $2,555.62 |
| May-22 | $3,448.73 | 0.00 | 5360.39 | 3448.73 | 0.00 | 0.00 | 0.00 | -$3,448.73 | $83,108.36 | $432.78 | $1,298.34 | $5,360.39 | $269,324.71 | $1,293.01 | $3,848.63 |
| Jun-22 | $6,897.46 | 0.00 | 5360.39 | 1537.07 | 5360.39 | 0.00 | 0.00 | -$1,537.07 | $81,571.29 | $415.54 | $1,713.88 | $0.00 | $269,324.71 | $1,319.82 | $5,168.45 |
| Jul-22 | $6,897.46 | 0.00 | 5360.39 | 1537.07 | 5360.39 | 0.00 | 0.00 | -$1,537.07 | $80,034.22 | $407.85 | $2,121.73 | $0.00 | $269,324.71 | $1,346.62 | $6,515.07 |
| Aug-22 | $6,897.46 | 0.00 | 5360.39 | 1537.07 | 5360.39 | 0.00 | 0.00 | -$1,537.07 | $78,497.15 | $400.17 | $2,521.90 | $0.00 | $269,324.71 | $1,346.62 | $7,861.69 |
| Sep-22 | $3,448.73 | 0.00 | 5360.39 | 0.00 | 3448.73 | 0.00 | 0.00 | $0.00 | $78,497.15 | $392.48 | $2,914.38 | $1,911.66 | $271,236.37 | $1,346.62 | $9,208.31 |
| Oct-22 | $6,897.46 | 0.00 | 5360.39 | 1537.07 | 5360.39 | 0.00 | 0.00 | -$1,537.07 | $76,960.08 | $392.48 | $3,306.86 | $0.00 | $271,236.37 | $1,346.62 | $10,554.93 |
| Nov-22 | $6,897.46 | 0.00 | 5360.39 | 1537.07 | 5360.39 | 0.00 | 0.00 | -$1,537.07 | $75,423.01 | $384.80 | $3,691.66 | $0.00 | $271,236.37 | $1,356.18 | $11,911.11 |
| Dec-22 | $10,346.19 | 0.00 | 5360.39 | 4985.80 | 5360.39 | 0.00 | 0.00 | -$4,985.80 | $70,437.21 | $377.11 | $4,068.77 | $0.00 | $271,236.37 | $1,356.18 | $13,267.29 |
| ADJUSTMENTS - 5% INCREASE TO SPOUSAL CSUP 1/1/23 & COMPOUNDED INTEREST | | | | | | | CHILD COMPOUNDED INTEREST | | $203.50 | $4,272.27 | SPOUSAL COMPOUNDED INTEREST | | $663.40 | $13,930.69 |
| Jan-23 | $3,405.23 | 0.00 | 5628.41 | | 3405.23 | 0.00 | 0.00 | $0.00 | $70,437.21 | $352.18 | $4,624.45 | $2,223.18 | $273,459.55 | $1,356.18 | $15,286.87 |
| Feb-23 | $6,810.45 | 0.00 | 5628.41 | 1450.06 | 5360.39 | 0.00 | 0.00 | -$1,450.06 | $68,987.15 | $352.18 | $4,976.63 | $268.02 | $273,727.57 | $1,356.18 | $16,643.05 |
| Mar-23 | $6,810.46 | 0.00 | 5628.41 | 1450.07 | 5360.39 | 0.00 | 0.00 | -$1,450.07 | $67,537.08 | $344.93 | $5,321.56 | $268.02 | $273,995.59 | $1,367.29 | $18,010.34 |
| Apr-23 | $6,810.46 | 0.00 | 5628.41 | 1450.07 | 5360.39 | 0.00 | 0.00 | -$1,450.07 | $66,087.01 | $337.68 | $5,659.24 | $268.02 | $274,263.61 | $1,368.63 | $19,378.97 |
| May-23 | $6,810.45 | 0.00 | 5628.41 | 1450.06 | 5360.39 | 0.00 | 0.00 | -$1,450.06 | $64,636.95 | $330.43 | $5,989.67 | $268.02 | $274,531.63 | $1,369.97 | $20,748.94 |
| Jun-23 | $6,810.46 | 0.00 | 5628.41 | 1450.07 | 5360.39 | 0.00 | 0.00 | -$1,450.07 | $63,186.88 | $323.18 | $6,312.85 | $268.02 | $274,799.65 | $1,371.31 | $22,120.25 |
| Jul-23 | $6,810.46 | 0.00 | 5628.41 | 1450.07 | 5360.39 | 0.00 | 0.00 | -$1,450.07 | $61,736.81 | $315.93 | $6,628.78 | $268.02 | $275,067.67 | $1,372.65 | $23,492.90 |
| Aug-23 | $10,215.68 | 0.00 | 5628.41 | 4855.29 | 5360.39 | 0.00 | 0.00 | -$4,855.29 | $56,881.52 | $308.68 | $6,937.46 | $268.02 | $275,335.69 | $1,373.99 | $24,866.89 |
| Sep-23 | $0.00 | 0.00 | 5628.41 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 | $56,881.52 | $284.40 | $7,221.86 | $5,628.41 | $280,964.10 | $1,375.33 | $26,242.22 |
| Oct-23 | $0.00 | 0.00 | 5628.41 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 | $56,881.52 | $284.40 | $7,506.26 | $5,628.41 | $286,592.51 | $1,376.67 | $27,618.89 |
| Nov-23 | $0.00 | 0.00 | 5628.41 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 | $56,881.52 | $284.40 | $7,790.66 | $5,628.41 | $292,220.92 | $1,404.82 | $29,023.71 |
| Dec-23 | $0.00 | 0.00 | 5628.41 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 | $56,881.52 | $284.40 | $8,075.06 | $5,628.41 | $297,849.33 | $1,432.96 | $30,456.67 |
| ADJUSTMENTS - 5% INCREASE TO SPOUSAL CSUP 1/1/24 & COMPOUNDED INTEREST | | | | | | | CHILD COMPOUNDED INTEREST | | $484.56 | $8,559.62 | SPOUSAL COMPOUNDED INTEREST | | $1,827.48 | $32,284.15 |
| Jan-24 | $0.00 | 0.00 | 5909.83 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 | $56,881.52 | $284.40 | $8,844.02 | $5,909.83 | $303,759.16 | $1,461.10 | $33,745.25 |
| Feb-24 | $0.00 | 0.00 | 5909.83 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 | $56,881.52 | $284.40 | $9,128.42 | $5,909.83 | $309,668.99 | $1,489.24 | $35,234.49 |
| Mar-24 | $0.00 | 0.00 | 5909.83 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 | $56,881.52 | $284.40 | $9,412.82 | $5,909.83 | $315,578.82 | $1,518.79 | $36,753.28 |
| Apr-24 | $0.00 | 0.00 | 5909.83 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 | $56,881.52 | $284.40 | $9,697.22 | $5,909.83 | $321,488.65 | $1,548.34 | $38,301.62 |
| May-24 | $0.00 | 0.00 | 5909.83 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 | $56,881.52 | $284.40 | $9,981.62 | $5,909.83 | $327,398.48 | $1,577.89 | $39,879.51 |
| Jun-24 | $787.49 | 0.00 | 5909.83 | 787.49 | 0.00 | 0.00 | 0.00 | -$787.49 | $56,094.03 | $284.40 | $10,266.02 | $5,909.83 | $333,308.31 | $1,607.44 | $41,486.95 |
| Jul-24 | $4,374.39 | 0.00 | 5909.83 | 0.00 | 4374.39 | 0.00 | 0.00 | $0.00 | $56,094.03 | $280.47 | $10,546.49 | $1,535.44 | $334,843.75 | $1,636.99 | $43,123.94 |
| Aug-24 | $2,810.31 | 0.00 | 5909.83 | 0.00 | 2810.31 | 0.00 | 0.00 | $0.00 | $56,094.03 | $280.47 | $10,826.96 | $3,099.52 | $337,943.27 | $1,666.54 | $44,790.48 |
| Sep-24 | $0.00 | 0.00 | 5909.83 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 | $56,094.03 | $280.47 | $11,107.43 | $5,909.83 | $343,853.10 | $1,674.21 | $46,464.69 |
| Oct-24 | $0.00 | 0.00 | 5909.83 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 | $56,094.03 | $280.47 | $11,387.90 | $5,909.83 | $349,762.93 | $1,689.71 | $48,154.40 |
| Nov-24 | $0.00 | 0.00 | 5909.83 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 | $56,094.03 | $280.47 | $11,668.37 | $5,909.83 | $355,672.76 | $1,719.26 | $49,873.66 |
| Dec-24 | $0.00 | 0.00 | 5909.83 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 | $56,094.03 | $280.47 | $11,948.84 | $5,909.83 | $361,582.59 | $1,748.81 | $51,622.47 |
| ADJUSTMENTS - 5% INCREASE TO SPOUSAL CSUP 1/1/25 & COMPOUNDED INTEREST | | | | | | | CHILD COMPOUNDED INTEREST | | $717.00 | $12,665.84 | SPOUSAL COMPOUNDED INTEREST | | $3,097.44 | $54,719.91 |
| Jan-25 | $0.00 | 0.00 | 6205.32 | | 0.00 | 0.00 | 0.00 | $0.00 | $56,094.03 | $280.47 | $12,946.31 | $6,205.32 | $367,787.91 | $1,778.36 | $56,498.27 |
| Feb-25 | $0.00 | 0.00 | 6205.32 | | 0.00 | 0.00 | 0.00 | $0.00 | $56,094.03 | $280.47 | $13,226.78 | $6,205.32 | $373,993.23 | $1,807.91 | $58,306.18 |
| Mar-25 | $0.00 | 0.00 | 6205.32 | | 0.00 | 0.00 | 0.00 | $0.00 | $56,094.03 | $280.47 | $13,507.25 | $6,205.32 | $380,198.55 | $1,838.93 | $60,145.11 |
| Apr-25 | $0.00 | 0.00 | 6205.32 | | 0.00 | 0.00 | 0.00 | $0.00 | $56,094.03 | $280.47 | $13,787.72 | $6,205.32 | $386,403.87 | $1,869.96 | $62,015.07 |
| May-25 | $50,919.61 | 0.00 | 6205.32 | 50919.61 | | 0.00 | 0.00 | -$50,919.61 | $5,174.42 | $280.47 | $14,068.19 | $6,205.32 | $392,609.19 | $1,900.99 | $63,916.06 |
| Jun-25 | $13,080.00 | 0.00 | 6205.32 | 5174.42 | 6205.32 | 0.00 | 0.00 | -$5,174.42 | $0.00 | -$1,674.39 | $12,393.80 | $0.00 | $392,609.19 | $1,932.01 | $65,848.07 |
| Jul-25 | $0.00 | 0.00 | 6205.32 | | | 0.00 | 0.00 | $0.00 | $0.00 | $0.00 | $12,393.80 | $6,205.32 | $398,814.51 | $1,963.04 | $67,811.11 |
| | $185,686.40 | $86,557.09 | $496,243.56 | $86,557.09 | $89,929.05 | $ - | $7,500.00 | Child $ 86,557.09 | | Child Interest $ 14,094.06 | | Spousal $ 496,243.56 | | Spsl Interest $ 67,811.11 | |
| | | | | | | | | Paid Child $ 86,557.09 | | Paid Child Interest $ 1,700.26 | | Paid Spousal $ 97,429.05 | | Paid Spsl Interest $ - | |
| | | | | | | | | Bal Owed $ - | | Bal Owed $ 12,393.80 | | Bal Owed $ 398,814.51 | | Bal Owed $ 67,811.11 | |

# – Misapplication of Payments by DCSE

## 1. Payments Made Since 2017

DCSE's own audit spreadsheet confirms that Counter-Claimant has made **total payments exceeding $290,000** since this case began in 2017.

## 2. Fully Adjudicated Child Support Balance as of February 1, 2022

As of **February 1, 2022**, DCSE recorded the fully adjudicated **child support arrears balance as $86,557.09, plus interest and fees**. This figure reflects the resolved amount owed on child support, subject only to statutory interest accrual.

## 3. Payments Made Since May 2022

From **May 2022 through June 2025**, DCSE's ledger confirms that Counter-Claimant paid more than **$185,000**.

For example:

- May 2022: $3,448.73 paid.
- June–Dec 2022: $6,897.46 paid nearly every month.
- 2023: regular payments including $6,810.46 most months.
- May 2025: $50,919.61 lump sum payment.
- June 2025: $13,080 payment.

Cumulatively, these payments exceed **twice the adjudicated child support obligation ($86,557.09)**.

## 4. Court-Ordered Payment Hierarchy (March 1, 2019 Order)

The **March 1, 2019 court order** requires that:

1. All payments must first be applied to **child support principal**;
2. Then to **child support interest**;
3. Only after child support is fully satisfied may payments be applied to **spousal support**.

This hierarchy is unambiguous.

## 5. DCSE's Noncompliance with Court Orders

Despite receiving more than sufficient funds to extinguish the entire child support obligation, DCSE's records continue to show a child support balance after June 2025.

This outcome is only possible if DCSE:

- Ignored or bypassed the **March 1, 2019 payment hierarchy**, and
- Redirected substantial payments toward spousal obligations before child support was satisfied.

Such handling is inconsistent with the express language of the Court's order. Had DCSE complied with the mandated hierarchy, the child support obligation would have been fully extinguished long before mid-2025.

# 6. Legal Significance

The evidence establishes that:

- Counter-Claimant has paid **more than double** the adjudicated child support obligation since May 2022.
- Nevertheless, DCSE continues to report an outstanding child support balance.
- This continued reporting is the direct result of DCSE's failure to follow the March 1, 2019 court order.

# 7. Conclusion

The Court should find that:

1. Counter-Claimant's child support obligation was fully satisfied well before June 2025, given payments exceeding $185,000 against an $86,557.09 balance.

2. DCSE's continued reporting of a child support balance results from its willful and deliberate violation of the March 1, 2019 court order.

3. Proper accounting and application of payments is necessary to restore compliance with the Court's order and to credit Counter-Claimant with satisfaction of his child support obligations.

1

# False statements by Mrs. Marni to this Court and US Bankruptcy Court

1. Since March of 2016 until Mrs. Marni applied for Bankruptcy in February of 2019, Mr. Marni made 13 monthly payments, some continuously, and others collectively. Mrs. Marni received this payments, proof exists and can't be deny. Please see payment table on page 2.

2. From March of 2016 until February of 2019 there are 36 months and she received 13 monthly payments. Mrs. Marni claimed on her bankruptcy papers she did not received child/spousal payments for 28 months.  This math does not add up.

3. On November 2nd of 2018, she acknowledge to Judge she did not receive payments for 24-25 months. Again the math does not add up based on the payments made.

4. Between Nov. 2nd, 2018 court date and Mrs. Marni bankruptcy date of Feb. 26th, 2019, there are 4 months. During these four months, she received payments of $ 31,148, or about 5 months of payments. Please refer payment page 2, items 11, 12, 13, 14, 15.

5. She told Judge on Nov. 2, 2018, she did not received payments for 24 months and four months later she wrote on Bankruptcy pages, 28 months of payments were not received.  But as per paragraph 4, she received 5 months of payments between these two dates. Again her statements do not add up.

1

2

## Payments made since March of 2016 to Ksenija Marni until February of 2019, when Mrs. Marni applied for Bankruptcy

1. November/December 2016 - **$10,000** (about). (Requesting check images from Bank)
2. April 2017 - **$1940** ( For car but she did not sell car and kept the money and to be applied towards child/spousal support) ( Requesting check image from Bank)
3. June 2017 -    **$3000** worth of furniture from Value city and Belmont Furniture
4. July 2017 -    **$3000** – Check image enclosed
5. February 2018 - **$2000** – Check image enclosed
6. April 2018 - **$6615** – Check image enclosed. Paid to DCSE.
7. May 2018 - **$6615** - Check image enclosed. Paid to DCSE.
8. June 2018 - **$6615** - Check image enclosed. Paid to DCSE.
9. July 2018 - **$6615** - Check image enclosed. Paid to DCSE.
10. August - **$6615** - Check image enclosed. Paid to DCSE.
11. November 7th, 2018 - **$10,549** – DCSE – Statement enclosed. Garnished wages.
12. November 20th, 2018 - **$599** – DCSE – Statement enclosed
13. February 1st, 2019 - **$15,000** ( Paid as part of bond money)
14. March 1st, 2019 - **$5000** ( paid as bond money )
15. March 1st, 2019 - **$500** ( Bond release money )

6. From the separation agreement until Mrs. Marni applied for Bankruptcy in late February of 2016, a total of around $ 84,663 was paid to Mrs. Marni. Assuming the monthly payments are about $6615, this equates to 13 monthly payments.

2

3

# Payments made since June of 2019

16. June 2019 payment - **$6615**

17. July 2019 payment - **$6615**

18. August 2019 payment - **$6615**

    a. Two payments of **$500** each towards arrears as per new contract

19. September 2019 payment - **$6615**

    a. Two payments of **$750** each towards arrears as per new contract

20. October 2019 payment - **$3500** ( second payment on October 16th)

    a. One payment of **$750** towards arrears as per new contract second payment due Oct. 16th.

# EXHIBIT - B

**NOTE ON DOCUMENT LENGTH**: For the sake of brevity and to reduce the volume of the record, the attached exhibits contain only the relevant excerpts of the larger documents. Full versions of these records are available and will be produced upon request.

 **Gmail**

Raj Marni <rajmarni@gmail.com>

## My Sincere Apologies

**Bullard, Sue (VDSS)** <sue.a.bullard@dss.virginia.gov>
Tue, Nov 19, 2024 at 6:57 AM
To: Raj Marni <rajmarni@gmail.com>

Mr. Marni:

Thank you for your thoughtful apology. I am now requesting that my supervisor research this case in greater detail, to see if I may have missed anything.

## Please note that . .

- Whenever VA DCSE receives a Court's judgment, it automatically **supersedes any balance(s) showing on our system.** Once an Order is entered and the Appeal period has exhausted, the judgment is then set in stone.
- **VA DCSE** is not Attorneys nor Judges and ***we do not*** have the power to override a Court's Order. Both you or the custodial parent have the right to file your own Motion directly with the **Loudoun County Circuit Court** and present them with any supporting documentation either of you may have, requesting credit(s) be given and a new judgment be entered, if applicable.
- According to our records, the custodial parent requested case closure **12.09.2019. This case closed with our office** from **01.07.2020** through **04.20.2022.** On **04.21.2022** the custodial parent reopened this case with **VA DCSE.** No statement of payments was required, as she provided **VA DCSE** with a copy of the **Loudoun County Circuit Court Order** that was heard on **04.06.2022** and entered on **04.18.2022,** which adjudicated both child support and spousal support arrears.

## Attached Prior Orders & Judgments for your reference . .

- The **Loudoun Co Circuit Court Order (see attached)** heard on **04.06.2022** and entered on **04.18.2022**; entered an **arrears judgment** adjudicating your arrears as being:

  - **Child Support: $86,557.09 as of 02.01.2022**
  - **Spousal Support: $255,383.15 as of 02.01.2022**
  - **Both payable at the rate of 6% per annum, compounded annually beginning 06.01.2016**

- The **Loudoun County Circuit Court Order (see attached)** entered **03.01.2019** on **Motion for Determination of Child Support and Spousal Support Arrears.** Based on an agreement between the parties, **entered an arrears judgment,** adjudicating your arrears as being:

  - **Child Support: $59,028.55 as of 02.28.2019 (Exhibit #1)**
  - **Spousal Support: $127,764.11 as of 02.28.2019 (Exhibit #2)**
  - **Both payable at the rate of 6% per annum, compounded annually beginning 06.01.2016**

- Your **Separation Agreement (see attached)** entered into by both you and the custodial parent dated **02.08.2016** was incorporated into your **Loudoun County Circuit Court Order (see attached)** (Docket #CL 00107389-00) that was heard on **12.04.2017** and entered on **01.05.2018,** which ordered you to pay the following . .

  - **$2,000 per month** toward **child support** beginning **06.01.2016**
  - which *increases by 5% on January 1st of each year thereafter . .*
  - Entered an arrears judgment for Child Support in the amount of **$39,200 as of 12.01.2017.**

- o  **$4,000 per month** toward **spousal support** beginning <u>06.01.2016</u>
- o  which *increases by <u>5%</u> on January 1st of each year thereafter . .*
- o  Entered an arrears judgment for Spousal Support in the amount of **$78.400 as of 12.01.2017.**

\*\*Please allow additional time for my supervisor to review this documentation and get back to you.



**VIRGINIA DEPARTMENT OF
SOCIAL SERVICES**



DCSE Division of Child
Support Enforcement



**Sue Ann Bullard**
*Support Enforcement Specialist*
Virginia Department of Social Services
PO Box 28450, Richmond, VA 23228
(800) 468.8894 / (540) 722.7518

www.dss.virginia.gov



[Quoted text hidden]

**3 attachments**

📄 **Loudoun Co Circuit Order heard 04062022.VA DCSE Case #0005005576.pdf**
492K

📄 **Loudoun Co Circuit Agreed Order heard 03012019.VA DCSE Case #0005005576.pdf**
122K

📄 **Loudoun Co Circuit Order heard 12172017.VA DCSE Case #0005005576.pdf**
1900K

# EXHIBIT - C

**NOTE ON DOCUMENT LENGTH**: For the sake of brevity and to reduce the volume of the record, the attached exhibits contain only the relevant excerpts of the larger documents. Full versions of these records are available and will be produced upon request.

 **VIRGINIA DEPARTMENT OF SOCIAL SERVICES**

Division of Child Support Enforcement
PO BOX 28450
Richmond, VA 23228
http://www.dss.virginia.gov/family/dcse/
1-800-468-8894

## Virginia DCSE Payment Record

June 11, 2025

Case Number: 0005005576

Date Range Selected: 01/01/2018 to 06/11/2025

| | |
|---|---|
| Case Number: | 0005005576 |
| Parent Paying Support: | MARNI, RAJ - 0005005589 |
| Parent/Custodian Receiving Support: | TRDIC, KSENIJA - 0005005585 |
| Last Payment Date: | 08/14/2024 |

| | Balance Information | | | |
|---|---|---|---|---|
| | Owed To | | | Total |
| | Parent/Custodian Receiving Support | Virginia | Other | |
| Arrears | 5,174.42 | 0.00 | 0.00 | 5,174.42 |
| Interest | 1,298.34 | 0.00 | 0.00 | 1,298.34 |
| Fees | 0.00 | 58.30 | 0.00 | 58.30 |
| Subtotal | 6,472.76 | 58.30 | 0.00 | 6,531.06 |
| Unpaid Current Support Charge | 0.00 | 0.00 | 0.00 | 0.00 |
| Total | 6,472.76 | 58.30 | 0.00 | 6,531.06 |

I certify that this is a true copy of the financial record maintained by the Division of Child Support Enforcement.
The support arrearage through 5/31/2025 is $ 6531.06.
Bret H Funk
Authorized Representative

# EXHIBIT - D

**NOTE ON DOCUMENT LENGTH**: For the sake of brevity and to reduce the volume of the record, the attached exhibits contain only the relevant excerpts of the larger documents. Full versions of these records are available and will be produced upon request.

 Gmail

Kasey Trdic <kaseykcm@gmail.com>

## VA DCSE Case #0005005576 - Compounded Interest Calculations

1 message

**Bullard, Sue (VDSS)** <Sue.A.Bullard@dss.virginia.gov>
To: "Kasey Trdic (kaseykcm@gmail.com)" <kaseykcm@gmail.com>

Fri, Jun 27, 2025 at 7:09 PM

Hello,

As discussed via telephone call earlier this evening, DCSE is not able to do the calculations, based on the following findings . .

- Our legal unit reviewed the orders for the case and has advised that we are not able to calculate the compounded interest that may be due.
- DCSE would need a court order setting the total amount due for child support in order to adjust our records.
- The remaining child support arrears balance is set to be paid off on 6/30/2025 (the night of) with the payment that we have on hold.
- Once that balance is paid, our case will be set for closure as our agency does not enforce spousal support without a child support obligation or arrears balance.
- DCSE cannot keep this case open pending the anticipation of a possible order in December 2025.
- The non-custodial parent will be directed to pay spousal support arrears to you directly, as enforcement actions will be released & your DCSE case will be closed.
- DCSE will have to release our hold on his passport, as since we will no longer show any child support arrears, we won't have the ability to keep our hold in place.
- Should the court enter an order which adjudicates that a child support balance is still owed, you may then apply for services to have this case reopened.

Thanks so much . .

**Sue Ann Bullard**
*Support Enforcement Specialist*
Virginia Department of Social Services
PO Box 28450, Richmond, VA 23228
(800) 468.8894 / (540) 722.7518

# EXHIBIT - E

**NOTE ON DOCUMENT LENGTH**: For the sake of brevity and to reduce the volume of the record, the attached exhibits contain only the relevant excerpts of the larger documents. Full versions of these records are available and will be produced upon request.



TELEPHONE (540) 722-7568
FACSIMILE (540) 722-3492

WINCHESTER DISTRICT OFFICE
629 CEDAR CREEK GRADE SUITE A
WINCHESTER, VA  22601

July 31, 2025

# COMMONWEALTH of VIRGINIA

DEPARTMENT OF SOCIAL SERVICES
DIVISION OF CHILD SUPPORT ENFORCEMENT

Mr. Raj Marni
383 Orchid Lane Apt F
Pomona, CA 91766

Re: DCSE case 5005576

Dear Mr. Marni,

I'm responding to your questions about your child support case with the Virginia Division of Child Support Enforcement (DCSE). I hope the following summary clarifies the status of your case and the steps taken by DCSE.

The DCSE is enforcing court orders from the Loudoun County Circuit Court. A court order dated January 5, 2018, incorporating the Property Settlement Agreement, set your child support at $2,000 per month with a 5% annual increase effective June 1, 2016, and spousal support at $4,000 per month with a 5% annual increase effective the same date. Another order entered by the Loudoun County Circuit Court on February 1, 2019, required 6% annual interest compounded yearly on all arrears starting June 1, 2016. Orders from April 18, 2022, and May 25, 2022, determined your child support arrears to be $86,557.09 and spousal support arrears to be $255,383.15 as of February 1, 2022.

On April 20, 2022, the DCSE received an application for service from Ms. Ksenija Trdic. The child support case was reopened on our system on April 21, 2022. At that time, balances were added to the account based on the adjudicated arrears stated in the April 18, 2022 court order. The case is currently open for the collection of child support interest and spousal current support, arrears, and interest. Current child support is not being charged or collected as all children have emancipated.

On May 16, 2025, the DCSE discovered an accounting error where the 5% annual increase for spousal support was not accurately applied. An adjustment was made to the account on that date to incorporate the 5% increase.

On June 30, 2025, it was discovered that the 6% annual interest that was supposed to be charged on child support arrears had not been applied in the automated system since the case opened on April 21, 2022. An adjustment was made to the account on that date to reflect the interest that should have been charged from that date forward. Additionally on June 30, 2025, questions

An Equal Opportunity Agency

about the compounding of interest ordered on February 1, 2019, were escalated to DCSE management. Since the automated child support system does not calculate compounded interest automatically, such amounts would need to be manually calculated.

In July 2025, a full audit of your case was conducted, covering the period from the last court-ordered adjudication of arrears to the present. During the audit, our fiscal team accurately calculated 6% interest on all arrears, factored in the ordered 5% annual increase for monthly spousal support, credited additional payments you made directly to Ms. Trdic in 2022, and compounded interest on all arrearages as ordered by the court. A copy of the audit spreadsheet is included with this letter. Adjustments were made to your account on July 31, 2025, reflecting all balances determined during the audit. As of today, the DCSE system shows your case balances as follows: $12,393.80 in child support interest, $6,205.32 in current spousal support, $392,609.19 in spousal support arrears, and $67,811.11 in spousal support interest. The attached DCSE payment record details the adjustments made to your account on July 31, 2025, based on the audit findings.

A court hearing is set for December 3, 2025, in the Loudoun County Circuit Court, following a motion filed by Ms. Trdic. If the court determines additional balances during that hearing, the DCSE accounting will be updated to reflect the court's decision.

In your inquiries to DCSE, you raised concerns about the allocation of child support payments and referenced your March 1, 2019, court order, which states: "For tax purposes, all payments received will be counted towards the outstanding child support payments first, until paid in full, and then to the spousal support, unless requested otherwise by the plaintiff." After this order was issued, Ms. Trdic applied for agency services and agreed to the payment hierarchy outlined in DCSE policy. According to this hierarchy, payments are first applied to spousal current support each month, with any excess going to child arrears and interest, followed by spousal arrears and interest. The attached spreadsheet and payment record detail the allocation of all payments made through DCSE. Further information about the payment hierarchy and allocation can be found in the DCSE Program Manual, Chapter 11 Section 11.2.E, or Chapter 14 Section 14.4. If the court determines a new balance on December 3, 2025, DCSE will update the account accordingly. Please note that all child support arrears and interest must be fully paid before DCSE can report a $0 balance to the Department of State for your passport.

You also mentioned concerns about misconduct and discrimination involving your assigned case advisor, Ms. Sue Bullard. Ms. Bullard has been your case advisor for a significant period and has consistently worked to address all past and current inquiries from both parents impartially and in line with program guidelines and procedures.

I hope this information is helpful. If you have any further questions, feel free to reach out to your assigned case advisor, Ms. Sue Bullard, or the Senior Specialist, Ms. Kaitlyn Shaner. All future inquiries will be directed and addressed appropriately.

Thank you,

Holly Parker

An Equal Opportunity Agency

# EXHIBIT - F

**NOTE ON DOCUMENT LENGTH**: For the sake of brevity and to reduce the volume of the record, the attached exhibits contain only the relevant excerpts of the larger documents. Full versions of these records are available and will be produced upon request.

VIRGINIA:

IN THE CIRCUIT COURT OF LOUDOUN COUNTY

KSENIJA MARNI,                               *

     Plaintiff,                              *

v.                                           *          Case No. CL00107389

RAJ MARNI,                                   *

     Defendant.                              *


ORDER

This matter was heard this day <u>March 1, 2019</u>, on the following:

Review of Defendant's purge plan, and review of Defendant's plan and efforts in obtaining employment and meeting monetary and non-monetary obligations, pursuant to the PSA, as ordered by this Court on February 1, 2019.

It appearing that this Court has jurisdiction to hear and determine this matter, that each party entitled to notice has been notified;
It further appearing based upon the agreement of the parties that this Order should be entered, it is therefore,

ORDERED as follows:

<u>Monetary provision of the PSA:</u>

Defendant to pay, by depositing the money, by the due date (unless otherwise provided) into Plaintiff's bank account herewith attached in a private Addendum:

    1.  $6,945.75 current monthly payments for child support and spousal support beginning May 1, 2019. For tax purposes, all payments received will be counted towards the

outstanding child support payments first, until paid in full and then to the spousal support, unless requested otherwise by the Plaintiff.

2. $11,455 Daughter's support payment plus 6 % compounded interest (per November 2, 2018 Court's Order, and February 1, 2019 Court's Order for interest) in the "Lump Sum Monthly Installment Payments" listed below.

3. A portion of arrears for Spousal Support in the "Lump Sum Monthly Installment Payments" listed below. The remaining arrears along with the 6% compounded annual interest shall be calculated and paid in lump sum on or before May 1, 2020.

4. $2000 attorney fees in "Lump Sum Monthly Installment Payments" listed below. Compounded annual interest rate of 6% is not included in this payment and will be paid separately. As of March 1, 2019, the arrears are $2205 (Exhibit 1).

5. Appellate damages of $10,457 plus 6% compounded annual interest rate on or before September 21, 2019.

6. Loan payments for Prosper and Circle Bank to be made as follows:

   a. Prosper loan arrears (including 6% compounded annual interest) as of March 1, 2019 are: $10,261.10 (Exhibit 2). There are 24 payments remaining at $278.93/moth.

   b. Circle Bank loan arrears (including 6% compounded annual interest) as of March 1, 2019 are: $27,416.29 (Exhibit 3). There are 23 payments remaining at $745.27/month.

   c. Payments for the above 2 loans are to be made as follows:
      i. $18,838.70   ~~on September 1, 2019~~ march 15, 2020 (LN)
      ii. $18,838.70   ~~on December 1, 2019~~ May 15, 2020
      iii. The remaining arrears balance (plus 6% compounded annual interest) from March 1, 2019 until paid, and all the remaining payments on the loan are to be paid off in one lump sum on August 1, 2020.

7. Repayment of $3,214.92 PSA, Paragraph 35 shall be paid on November 15, 2019.

8. Parent Plus Loan obtained by the Plaintiff for their daughter's college: Plaintiff to provide an initial statement to the Defendant with payment amounts and due dates once it's received. Payments expect to begin at the end of daughter's graduation in the summer of 2019. Defendant to make monthly payments directly to the Plaintiff, by depositing the monthly payment amount, at least 30 days prior to the due date, into Plaintiff's bank account herewith attached in a **private Addendum.** The monthly payments shall be made for 12 months, after which the remaining balance will be paid in full directly to the Education department on behalf of the Plaintiff. Proof of paid off loan to be provided to the Plaintiff.

9. Per PSA, paragraph 36, Defendant to provide a down payment of 5% and assist in the purchase of home for the Plaintiff upon 90 day notice from the Plaintiff of her intention to buy a home.

10. Plaintiff's Outstanding VA Department of Taxation obligation incurred by the Defendant: The Plaintiff to provide a negotiated amount with the VA Tax to the Defendant. Defendant to pay $8,677 resulting out of State Tax offset from tax refunds due to the Plaintiff and a negotiated amount with the State on or before Dec 1, 2020.

**Lump Sum Monthly Installment Payments (applied towards child support obligation first):**

1. $30,000 on Jun 15, 2019
2. $30,000 on Aug 15, 2019
3. 43,000 on Oct 15, 2019
4. $43,000 on Dec 15, 2019

Non-monetary provisions of the PSA:

1. Defendant to provide, by March 15, 2019, proof of Life Insurance of $1,000,000, naming the Plaintiff as the beneficiary, per PSA dated February 8, 2016, Paragraph 37.

2.  Per PSA, Paragraph 28, Defendant to allocate 5% of shares of his equity in Samurai Technology Corporation to the Plaintiff, 5% of his shared to Clarissa Marni and 5% of his shares to Mark Marni, by April 31, 2019.

3.  Defendant to provide health insurance, dental and vision insurance by April 30, 2019 for the Plaintiff and their 2 children, per PSA dated February 8, 2016, Paragraph 15.

4.  Defendant to inform the Plaintiff of change of his address at least 15 days in advance.

5.  Defendant to provide Plaintiff proof of diligently seeking full time employment in IT field, similar to a position previously held at DataStax, as well as consulting work. Defendant to provide a list of companies, along with contact information for each position applied for, on a weekly basis to the Plaintiff. Defendant to apply to a minimum of 10 positions per week until he obtains employment sufficient to meet all his obligations under the Court's Order.

THIS MATTER IS SET FOR MAY 3, 2019 @ 2PM FOR REVIEW AND ENFORCEMENT IF NECESSARY

ENTERED this 1ˢᵗ day of March, 2019.

_____
JUDGE


SEEN & _Agreed_ :

_____
Ksenija Marni, Plaintiff *Pro Se*
43266 Baltusrol Ter
Ashburn, VA 20147
PH: 703-234-2880
kmarni@hotmail.com

SEEN &

Raj Marni, Defendant, *Pro Se*

13622 Cedar Run Ln

Herndon, VA 20171

PH: 571-880-2016

rajmarni@gmail.com

# EXHIBIT - G

**NOTE ON DOCUMENT LENGTH**: For the sake of brevity and to reduce the volume of the record, the attached exhibits contain only the relevant excerpts of the larger documents. Full versions of these records are available and will be produced upon request.

**VIRGINIA:**

### IN THE CIRCUIT COURT OF LOUDOUN COUNTY

| | |
|---|---|
| KSENIJA TRDIC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. _CL 107389-01;-02 |
| | ) |
| RAJ MARNI, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### ORDER

**THIS CAUSE** came on to be heard on the 3rd day of December, 2025 upon the Plaintiff's, Ksenija Trdic's Affidavit and Petition for Rule to Show Cause against the Defendant, Raj Marni, and Motion for Order Establishing Arrearage Amounts; and upon presentation of evidence and argument of counsel/parties; and

**IT APPEARING TO THE COURT** that the Defendant (hereinafter "Former Husband") is in arrears as alleged by the Plaintiff (hereinafter "Former Wife") in the following amounts:

1. Child Support – $63,493.98* as of November 30, 2025 plus the judgment rate of interest until paid in full.

2. Spousal Support – $441,185.70* as of November 30, 2025 plus the judgment rate of interest until paid in full.

3. Total Debts Owed to Former Wife - $214,532.54 as of November 30, 2025 plus interest until paid in full.

4. Total Support Debts Owed to Daughter - $63,356.63 as of November 30, 2025, plus interest owed until paid in full.

1

*Trdic v. Marni*
*CL107389-02*

✱ Amount includes principal and interest
*rssp*

5. Total Support Debts Owed to Son- $17,850.88 as of November 30, 2025.

*The details of each exact debt that is owed and the interest rate for each debt are set forth on the attached Exhibit "A", which is incorporated herein by reference.

**WHEREUPON**, upon review by this Honorable Court, it is hereby,

**ADJUDGED and ORDERED and DECREED** as follows:

1. The Former Husband is hereby in CONTEMPT of court for failure to timely pay his ongoing spousal support obligation to the Former Wife, for failure to maintain life insurance without lapse, and for failure to provide medical, dental and vision health coverage insurance for the Former Wife as required by the parties' Final Order of Divorce; and

2. Child and Spousal Support Arrearages – The Former Husband is hereby ORDERED to pay the arrearages to the Former Wife through the Division of Child Support Enforcement (hereinafter "DCSE") for so long as permitted by DCSE, and directly to the Former Wife thereafter. Any payments made by the Former Husband shall be credited to current obligations first, with any payments in excess of the current obligation applied to child support arrearages and then spousal support arrearages. Interest on any arrearages shall be at the judgment rate of interest, which is currently 6% annual interest.

3. The Former Husband shall surrender forthwith to the clerk of the court his passport (in the event he has not surrendered it as of the entry of this Order). The Former Husband shall take no action or direct anyone to take any action on his behalf to have any new or replacement passport issued. The Defendant shall not apply or attempt to obtain a new passport or international travel documentation in an attempt to leave the United States of America without prior court approval.

2

*Trdic v. Marni*
*CL107389-02*

4. This matter is hereby CONTINUED to March 11, 2026 for 90 minutes, separate from the current 90 minutes already set, for the Former Husband to present his purge plan and/or imposition of sanctions, which may include incarceration, related to the contempt finding of this Order. The Former Husband is hereby put on NOTICE of the terms and requirements set forth on attached Exhibit "B" related to the presentation of evidence and testimony related to his purge plan. The terms of Exhibit "B" are hereby incorporated herein by reference as if set forth herein in full, and the Former Husband is hereby ORDERED to comply therewith.

5. Attorney's Fees: The Former Husband is hereby ORDERED to pay attorney's fees and costs in the amount of $3,000 related to the filing of this matter, which shall be paid directly to the Former Wife on or before March 10, 2026.

**IT IS FURTHER ORDERED** that, after entry of this Order, Christin Georgelas, Esquire, and any attorney of the *SG Law, PLC* are hereby discharged as counsel of record for the Plaintiff, and ~~Anne Prentice, and any attorney~~ of the Division of Child Support Enforcement is hereby removed as a party ~~withdrawn as counsel~~ in this matter.

**THIS CAUSE IS CONTINUED to MARCH 11, 2026 at 9:00 AM.**

ENTERED ___9___ day of ___January___, 2026

_____
**JUDGE**

SEEN AND _____:

SG Law, PLC
Counsel for _Plaintiff_
102 North King Street
Leesburg, Virginia
571-977-2345 - telephone
571-977-2363 – facsimile

BY: _____

3

*Trdic v. Marni*
*CL107389-02*

Christin L. Georgelas, Esq., VSB 78456
christin@sglawplc.com

SEEN AND _____:

_____ Rule 1:13 did not appear ^noticed +

Raj Marni, Pro Se Defendant

SEEN AND _____:

_____

Anne Prentice, Esq., VSB No. 65-844

Counsel for the Division of Child Support Enforcement

* The Court has reviewed Mr. Marni's "Objection
to Proposed Order...." regarding this
Order, filed 12/29/25, and the Court
is not persuaded that this Order
should not be entered.

4

*Trdic v. Marni*
*CL107389-02*


EXHIBIT
A

### Summary of Child Support Debts Owed

| Subject of Arrearage | Interest Amount | Current Total Owed | Who Debt is Owed To |
|---|---|---|---|
| Parent Plus Loan (Daughter's student loan) | 7.6% | $57,200.32 | Ms. Trdic |
| Son's College Loan (Year 1) | 6% (Compounded) | $12,536.69 | Ms. Trdic |
| Daughter's Support | 6% (Compounded) | $14,335.49 | Daughter |
| Daughter's Support (Student Loan) | 5.05% | $37,863.55 | Daughter |
| Daughter's Support (Car) | 6% (Compounded) | $11,157.59 | Daughter |
| Son's College Loan (Year 3&4) Owed to Ms. Trdic | | $25,937.66 | Ms. Trdic |
| Son's College Loans (Years 3/4) | | $17,850.88 | Son |

### Summary of Debts Owed to Ms. Trdic

| Subject of Arrearage | Interest Amount | Current Total Owed |
|---|---|---|
| Prosper Loan | 6% (Compounded) | $24,299.42 |
| Circle Bank | 6% (Compounded) | $64,022.65 |
| Car Payment | 6% (Compounded) | $30,535.80 |
| | TOTAL | $118,857.87 |



EXHIBIT

B

01 Set 3/11/26 9 a.m. for 90 minutes SEPARATE FROM 90 MIN ALREADY SET.for purge plan and/or imposition of sanctions, which may include incarceration.

You are put on notice that on 3/1126 at 9:00 it will be your burden to demonstrate an inability to pay and reasons for not paying support as the Court has ordered, both in current payments and to address arrears. and for not maintaining life ins and health ins coverage as the Court has ordered,

You should be prepared to  present information and respond to questions about your financial status  at the hearing, including your ability to make the payments required of you pursuant to this Court's orders using the income, assets,  and or resources available to you.

Your financial status includes a full exposition of income and expenses, assets and debts. It includes information about your efforts to gain employment, including but not limited to documentation of applications and interviews, the position sought in an application or interview, the potential employer, the salary or pay rate for the jobs sought. You are ordered to take reasonable and diligent action in securing employment. The Court advises that you are to reasonably consider available employment even if it does not meet all your income, job description , or professional desires.  A job making 80K or 40 K is better than no job at all.  One can still seek more gainful employment while already employed.  Work release is always an option available to the Court.

At the hearing, the Court will expect that any testimony you provide about your financial circumstances/ job search that is reasonably feasibly supported by documentation, will have documentation offered in support thereof. Any documentation that you intend to offer to the Court in support of your exposition of your ability or inability to pay must be provided to Ms. Trdic's counsel, if she has counsel at the time, or directly to Ms. TRdic, if she does not, by Feb 25, 2026. Any documentation that is not provided by that date will not, except for good cause shown, be eligible for admission at the hearing on March 11.

The direction to provide this information does not preclude Ms TRdic, whether thru her atty or if she is pro se, from seeking discovery under the Rules of the Supreme Court of Virginia.

Any testimony that you provide will be taken under oath under penalty of perjury. You may reasonably expect that the Court or counsel will inquire as to whether you have provided a full exposition of your financial circumstances.

You may reasonably expect that the Court will award reasonable attorney's fees to Ms. TRdic for work associated with preparation and conduct of the hearing on 3/11 26.

# EXHIBIT - H

**NOTE ON DOCUMENT LENGTH**: For the sake of brevity and to reduce the volume of the record, the attached exhibits contain only the relevant excerpts of the larger documents. Full versions of these records are available and will be produced upon request.

# Child Support Calculations from June 1, 2016 to September 2020

These are the total payments. Payments made and 6% annual compounding not considered.

**1. Define Payment Periods and Rates:**

- **Initial Payment:** $2000/month
- **Start Date:** June 1, 2016
- **End Date:** September 30, 2020
- **Annual Increase:** 5% on January 1st of each year.

**2. Calculate Payments per Year:**

- **2016:**
  - Months: June, July, August, September, October, November, December (7 months)
  - Payment: $2000/month
  - Total 2016: $2000 * 7 = $14,000

- **2017:**
  - New Payment (Jan 1, 2017): $2000 * 1.05 = $2100/month
  - Months: January - December (12 months)
  - Total 2017: $2100 * 12 = $25,200

- **2018:**
  - New Payment (Jan 1, 2018): $2100 * 1.05 = $2205/month
  - Months: January - December (12 months)
  - Total 2018: $2205 * 12 = $26,460

- **2019:**
  - New Payment (Jan 1, 2019): $2205 * 1.05 = $2315.25/month
  - Months: January - December (12 months)
  - Total 2019: $2315.25 * 12 = $27,783

- **2020:**
  - New Payment (Jan 1, 2020): $2315.25 * 1.05 = $2431.0125/month (let's round to $2431.01 for practical purposes)
  - Months: January, February, March, April, May, June, July, August, September (9 months)
  - Total 2020: $2431.01 * 9 = $21,879.09

**3. Calculate Total Amount:**

Add the totals from each year:

$14,000 + $25,200 + $26,460 + $27,783 + $21,879.09 = $115,322.09

**Total Amount: $115,322.09**

**PHANTOM DEBT ANALYSIS - MATHEMATICAL PROOF OF DEFENDANTS' ACCOUNTING FRAUD**

**"The Anatomy of Phantom Debt: How $270,349 in Payments Became $800,419 in Claims"**

---

## I. INTRODUCTION

This exhibit demonstrates through elementary mathematics that the arrearages claimed by Defendants on December 3, 2025, are factually impossible. The claimed total arrearages of $800,419 exceed the total legitimate obligations by over $107,000 and create phantom debt of approximately $378,000 despite Debtor making payments of $270,349. This mathematical impossibility can only result from systematic accounting fraud involving misapplication of payments, collection of discharged debts, and claiming obligations for which Debtor has no legal responsibility.

**Important Notes on This Analysis:**

- **5% Annual Increase:** YES - fully accounted for in both child support and spousal support calculations.

- **6% Compounded Interest:** NO - the figures below represent PRINCIPAL ONLY, no interest included as this would require precise payment dates for each transaction. Even if we allocated $100,000 for interest on legitimate obligations, the total would NEVER reach Defendants claimed $800,419.

- **Rounded:** Cents not counted.

---

## II. TOTAL LEGITIMATE OBLIGATIONS (June 2016 - November 2025)

### A. Child Support Obligation

Per the December 4, 2017, Final Order of Divorce, child support was established at $2,000/month commencing June 1, 2016, and ending September 30, 2020, with 5% annual increases each January 1st.

| Year | Monthly Amount | Months | Total |
|------|---------------|--------|-------|
| 2016 | $2,000 | 7 | $14,000 |
| 2017 | $2,100 | 12 | $25,200 |

| Year | Monthly Amount | Months | Total |
|------|----------------|--------|-------|
| 2018 | $2,205 | 12 | $26,460 |
| 2019 | $2,315 | 12 | $27,783 |
| 2020 | $2,431 | 9 | $21,879 |
| **TOTAL CHILD SUPPORT OBLIGATION** | | **52 months** | **$115,322** |

## B. Spousal Support Obligation

Per the December 4, 2017, Final Order of Divorce, spousal support was established at $4,000/month commencing June 1, 2016, and continuing for life, with 5% annual increases each January 1st.

| Year | Monthly Amount | Months | Total |
|------|----------------|--------|-------|
| 2016 | $4,000 | 7 | $28,000 |
| 2017 | $4,200 | 12 | $50,400 |
| 2018 | $4,410 | 12 | $52,920 |
| 2019 | $4,630 | 12 | $55,566 |
| 2020 | $4,862 | 12 | $58,344 |
| 2021 | $5,105 | 12 | $61,261 |
| 2022 | $5,360 | 12 | $64,324 |
| 2023 | $5,628 | 12 | $67,540 |
| 2024 | $5,909 | 12 | $70,917 |
| 2025 | $6,205 | 11 | $68,258 |
| **TOTAL SPOUSAL SUPPORT OBLIGATION** | | **113 months** | **$577,534** |

## C. Combined Total Legitimate Obligations

| Category | Amount |
|----------|--------|
| Child Support (June 2016 - Sep 2020) | $115,322 |

| Category | Amount |
|---|---|
| Spousal Support (June 2016 - Nov 2025) | $577,534 |

**TOTAL LEGITIMATE OBLIGATIONS (PRINCIPAL ONLY) $692,856**

---

## III. TOTAL PAYMENTS MADE BY DEBTOR

### A. Pre-Bankruptcy Payments (March 2016 - December 2020)

| Payment Period | Amount | Documentation |
|---|---|---|
| November/December 2016 | ~$10,000 | Bank records |
| April 2017 | $1,940 | Check |
| June 2017 | $3,000 | Furniture |
| July 2017 | $3,000 | Check |
| February 2018 | $2,000 | Check |
| April - August 2018 | $33,075 | DCSE payments ($6,615 × 5) |
| November 2018 | $11,148 | DCSE garnishment |
| February - March 2019 | $20,500 | Bond payments |

**SUBTOTAL PRE-BANKRUPTCY $84,663.00**

### B. Post-Bankruptcy Payments (February 2022 - July 2025)

Per DCSE's own audit spreadsheet and payment ledger:

| Payment Period | Amount | Documentation |
|---|---|---|
| February 2022 - July 2025 | $185,686 | DCSE Ledger |

**SUBTOTAL POST-BANKRUPTCY $185,686**

### C. Total Payments

| Category | Amount |
|---|---|
| Pre-Bankruptcy Payments | $84,663 |
| Post-Bankruptcy Payments | $185,686 |
| **TOTAL PAYMENTS MADE** | **$270,349** |

---

## IV. CALCULATION OF LEGITIMATE ARREARAGES

### Simple Calculation (Assuming Zero Credit for Payments)

| Item | Amount |
|---|---|
| Total Legitimate Obligations (Principal Only) | $692,856 |
| MINUS: Total Payments Made | ($270,349) |

### MAXIMUM POSSIBLE LEGITIMATE ARREARS (Before Interest) $422,506

*Note: This calculation assumes zero interest, representing principal-only arrears. Even adding $100,000 for maximum possible interest would yield only $522,506, far below Defendants' claimed $800,419.*

### Calculation Under March 1, 2019, Payment Hierarchy

The March 1, 2019, Order mandates: "All payments received will be counted towards the outstanding child support payments first, until paid in full and then to the spousal support."

### Step 1: Apply All Payments to Child Support First

| Item | Amount |
|---|---|
| Total Child Support Obligation | $115,322 |
| MINUS: Total Payments (applied first to child support) | ($115,322) |
| **Child Support Balance** | **$0.00** |
| **Remaining Payments for Spousal Support** | $270,349 - $115,322 = **$155,027** |

### Step 2: Apply Remaining Payments to Spousal Support

| Item | Amount |
|---|---|
| Total Spousal Support Obligation (Principal Only) | $577,534 |
| MINUS: Payments Applied After Child Support Satisfied | ($155,027) |
| **Spousal Support Balance (Before Interest)** | **$422,506** |

## Step 3: Discharged Debts

| Item | Amount |
|---|---|
| Prosper Loan (discharged Feb 2019 & Dec 2020) | $0.00 |
| Circle Bank (discharged Feb 2019 & Dec 2020) | $0.00 |
| Car Payment (discharged Dec 2020) | $0.00 |
| **Total Discharged Debts Owed** | **$0.00** |

**CORRECT TOTAL ARREARAGES UNDER MARCH 1, 2019, ORDER: $422,506.69 (Principal Only)**

*Even with maximum interest of $100,000, total legitimate arrears cannot exceed $522,506.*

---

## V. DEFENDANTS CLAIMED ARREARAGES (December 3, 2025)

**Per December 3, 2025, Order and Exhibit A**

| Category | Claimed Amount |
|---|---|
| Child Support Arrears (as of Nov 30, 2025) | $63,493 |
| Spousal Support Arrears (as of Nov 30, 2025) | $441,185 |
| **Subtotal Support Arrears** | **$504,679** |
| **"Debts Owed to Former Wife":** | |
| Prosper Loan | $24,299 |
| Circle Bank | $64,022 |

| Category | Claimed Amount |
|---|---|
| Car Payment | $30,535 |
| Parent Plus Loan (Daughter) | $57,200 |
| Son's College Loan (Year 1) | $12,536 |
| Son's College Loan (Years 3&4) to Trdic | $25,937 |
| **Subtotal Debts to Former Wife** | **$214,532** |
| **"Debts Owed to Daughter":** | |
| Daughter's Support | $14,335 |
| Daughter's Support (Student Loan) | $37,863 |
| Daughter's Support (Car) | $11,157 |
| **Subtotal Debts to Daughter** | **$63,356** |
| **"Debts Owed to Son":** | |
| Son's College Loans (Years 3&4) | $17,850 |
| **Subtotal Debts to Son** | **$17,850** |
| **TOTAL CLAIMED ARREARAGES** | **$800,419** |

---

## VI. THE MATHEMATICAL IMPOSSIBILITY

### Comparison Table

| Calculation Method | Amount | Difference from Claimed |
|---|---|---|
| Maximum Possible Legitimate Arrears (principal only) | $422,506 | -$377,913 |
| Maximum Legitimate Arrears (with $100K interest) | $522,506 | -$277,913 |

| Calculation Method | Amount | Difference from Claimed |
|---|---|---|
| Correct Arrears Under March 1, 2019, Order (principal) | $422,506 | -$377,913 |
| **Defendants' Claimed Arrears** | **$800,419 baseline** | |

## The Impossibility Demonstrated

**Defendants claim Debtor owes $800,419 when:**

1. Total legitimate obligations (principal only) were $692,856
2. Debtor paid $270,349
3. Simple subtraction: $692,856.09 - $270,349 = **$422,506**
4. Even adding maximum interest: $422,506 + $100,000 = **$522,506**

**Therefore:**

- Defendants' claims **exceed total principal obligations by $107,563**
- Defendants' claims **exceed legitimate principal arrears by $377,913**
- Even with maximum interest, claims **exceed by $277,913**
- Defendants manufactured **approximately $378,000 in phantom debt**

## Visual Representation

LEGITIMATE OBLIGATIONS (Principal):  $692,856

PAYMENTS MADE:                 ($270,349)

LEGITIMATE ARREARS (Principal):   $422,506

LEGITIMATE ARREARS (Max Interest):  $522,506

DEFENDANTS' CLAIMS:        $800,419

↑

**IMPOSSIBLE**

**The claimed arrears exceed even the most generous calculation by $278,000.**

## VII. BREAKDOWN OF FRAUDULENT PHANTOM DEBT (~$378,000)

### Component 1: Inflated Child Support Starting Balance

| Item | Amount |
|---|---|
| Correct Child Support Balance (Feb 2022) under March 1, 2019, Order | ~$40,000 - $50,000 |
| DCSE Reported Balance (Feb 2022) | $86,557 |
| Fraudulent Inflation | ~$36,000 - $46,000 |

*Explanation: Pre-bankruptcy payments of $84,663 should have been applied to child support first per March 1, 2019, Order, reducing the $115,322 obligation to ~$30,000-$40,000 plus interest. Instead, payments were diverted to discharged debts.*

### Component 2: Discharged Property Settlement Debts

| Debt | Claimed Amount | Discharge Date | Amount Trdic Paid to Creditor | Legitimate Balance |
|---|---|---|---|---|
| Prosper Loan | $24,299 | Feb 2019 (Trdic) / Dec 2020 (Debtor) | $0.00 | $0.00 |
| Circle Bank | $64,022 | Feb 2019 (Trdic) / Dec 2020 (Debtor) | $0.00 | $0.00 |
| Car Payment | $30,535 | Dec 2020 (Debtor) | $0.00 | $0.00 |
| Subtotal Discharged Debts | $118,857 | | $0.00 | $0.00 |

*Explanation: Under Shaver v. Shaver and Lange v. Lange, these are dischargeable property settlement debts. Trdic paid zero dollars to creditors after discharge, creating zero indemnification claim.*

### Component 3: Adult Children's College Expenses

| Debt | Claimed Amount | Child's Status | Listed as Creditor in Bankruptcy | Legitimate Debtor Obligation |
|---|---|---|---|---|
| Parent Plus Loan | $57,200 | Daughter Adult | Yes | $0.00 |
| Daughter Support (Loan) | $37,863 | Daughter Adult | Yes | $0.00 |
| Daughter Support (Car) | $11,157 | Daughter age Adult | Yes | $0.00 |
| Son's College (Year 1) to Trdic | $12,536 | Son age 13 at agreement | No | $0.00 |
| Son's College (Years 3&4) to Trdic | $25,937 | Son adult at time of expense | No | $0.00 |
| Son's College (Years 3&4) direct | $17,850 | Son adult at time of expense | No | $0.00 |
| **Subtotal Adult Children** | **$162,546** | | | **$0.00** |

*Explanation: Under Shaver v. Shaver, college expenses for adult children (daughter age 19) are property settlement, not support. Son's college loans are hold harmless obligations to Trdic, also property settlement. All discharged in Debtor's December 2020 bankruptcy.*

**Component 4: Fraudulent Interest and Misapplication Effects**

| Source | Estimated Amount |
|---|---|
| Child Support Interest (should be $0 if payments applied correctly) | $12,393 |
| Spousal Support excess due to payment misapplication | ~$40,000 |
| Interest on Discharged Debts (compounded 6% on void balances) | ~$15,000 |
| **Subtotal Fraudulent Charges** | **~$67,000** |

*Explanation: Interest accruing on balances that shouldn't exist due to payment misapplication and discharge. Additionally, simultaneous payment allocation inflated spousal support by preventing proper reduction.*

**Total Manufactured Phantom Debt**

| Component | Amount |
|---|---|
| Inflated Child Support Starting Balance | ~$46,000 |
| Discharged Property Settlement Debts | $118,857 |
| Adult Children's College Expenses | $162,546 |
| Fraudulent Interest and Misapplication Effects | ~$67,000 |

**TOTAL PHANTOM DEBT (Principal Components) ~$394,404**

*Note: The total phantom debt of approximately $378,000 represents the difference between legitimate arrears and claimed arrears. The components above identify the specific fraudulent categories that created this phantom debt.*

---

## VIII. SIDE-BY-SIDE COMPARISON: LEGITIMATE vs. FRAUDULENT ACCOUNTING

| Obligation Category | Legitimate Amount (March 1, 2019 Order Followed) | Defendants' Claimed Amount | Phantom Debt |
|---|---|---|---|
| **CHILD SUPPORT** | | | |
| Principal & Interest | $0.00 (paid in full) | $63,493 | $63,493 |
| **SPOUSAL SUPPORT** | | | |
| Principal Only | $422,506.69 | $441,185 | $18,679 |
| **PROPERTY SETTLEMENT (DISCHARGED)** | | | |
| Prosper Loan | $0.00 | $24,299 | $24,299 |
| Circle Bank | $0.00 | $64,022 | $64,022 |

| Obligation Category | Legitimate Amount (March 1, 2019 Order Followed) | Defendants' Claimed Amount | Phantom Debt |
|---|---|---|---|
| Car Payment | $0.00 | $30,535 | $30,535 |
| Parent Plus Loan | $0.00 | $57,200 | $57,200 |
| Son's Loans to Trdic | $0.00 | $38,474 | $38,474 |
| Daughter's Expenses | $0.00 | $63,356 | $63,356 |
| Son's Loans Direct | $0.00 | $17,850 | $17,850 |
| TOTALS | $422,506 | $800,419 | $377,913 |

## IX. THE FRAUD MECHANISM: HOW PHANTOM DEBT WAS CREATED

### Step 1: Pre-Bankruptcy Misapplication (2016-2020)

**What Should Have Happened:**

- Apply $84,663 in payments to child support first per March 1, 2019, Order
- Child support balance (Feb 2022): ~$40,000-$50,000

**What Actually Happened:**

- Diverted payments to Prosper, Circle Bank, Car (later discharged)
- Reported child support balance (Feb 2022): $86,557
- **Created $36,000-$46,000 in phantom child support arrears**

### Step 2: Fraudulent DCSE Reopening (April 2022)

**What Should Have Been Reported:**

- Child support arrears: ~$40,000-$50,000 (if properly calculated)
- Prosper/Circle Bank/Car: $0.00 (discharged)

**What Was Actually Reported:**

- Child support arrears: $86,557 (inflated)
- Knowing this embedded ~$46,000 in discharged debt collection

- **Induced DCSE to collect on discharged obligations**

## Step 3: Post-Bankruptcy Continuing Violations (2022-2025)

**What Should Have Happened:**

- Apply $185,686 sequentially: first to child support, then spousal
- Child support paid in full by mid-2022
- Spousal support reduced by $155,027

**What Actually Happened:**

- Simultaneous allocation to both child and spousal
- Kept child support alive until June 2025
- Generated $12,393 in fraudulent interest
- Prevented $155,000 from reducing spousal support
- **Extended fraud for 39 additional months**

## Step 4: December 3, 2025, Presentation

**Presented to Court:**

- Total arrears: $800,419
- Including $118,857 in discharged debts
- Including $162,546 in adult children's expenses
- Including $63,493 in child support that should be $0

**Mathematical Result:**

- Claimed $800,419 against $692,856 in total obligations
- Created $377,913 in phantom debt
- **Subjected Debtor to contempt hearing based on fraudulent accounting**

## X. CONCLUSION

The mathematical analysis proves conclusively that:

1. **Defendants claimed arrears of $800,419 exceed the total legitimate principal obligations of $692,856 by $107,563**

2. **After crediting $270,349 in documented payments, legitimate principal arrears cannot exceed $422,506**

3. **Even allocating $100,000 for maximum possible interest, total arrears cannot exceed $522,506**

4. **Defendants manufactured approximately $378,000 in phantom debt through:**

   o   Misapplication of payments in violation of March 1, 2019, Order

   o   Collection of $118,857 in debts discharged in bankruptcy

   o   Claiming $162,546 in obligations for adult children's college expenses

   o   Accruing interest and fees on fraudulent balances

   o   Inflating child support starting balance by ~$46,000

5. **This result is mathematically impossible without systematic accounting fraud**

The claimed arrearages violate basic arithmetic: one cannot pay $270,349 against principal obligations of $692,856 and owe $800,419—even with generous interest calculations. The $378,000 differential represents phantom debt created through deliberate, systematic misapplication of payments combined with collection of legally extinguished debts.

**The December 3, 2025, five-hour contempt hearing that caused Debtor's cardiac emergency was predicated entirely on this mathematically impossible phantom debt.**

---

**End of Document**

# EXHIBIT - I

**NOTE ON DOCUMENT LENGTH**: For the sake of brevity and to reduce the volume of the record, the attached exhibits contain only the relevant excerpts of the larger documents. Full versions of these records are available and will be produced upon request.

Table of Contents

6. The NCP has 10 days from the date of the notice to submit a written request for an administrative appeal hearing.

(04/2013)

### D. Administrative Appeals (05/2024)

1. An administrative appeal is a formal hearing that gives an appellant the opportunity to contest actions taken by the Division.

2. Either party may formally appeal any of the provisions of an ASO.

3. The NCP appeals an action when he or she formally contests certain enforcement actions taken by the Division. These actions are:

   a. Federal Income Tax Offset – *FMS Offset Notice*

   b. Federal Income Tax *Pre-Offset Notice*

   c. Passport Denial

   d. *Order to Withhold*

   e. State Income Tax and Lottery Winnings Intercept

   f. Vendor Payment Intercept

   g. *Income Withholding for Support*

   h. Consumer Credit Agency Reporting

4. The NCP may only appeal the Division's actions to enforce a support order enforcement based on

   a. Mistake of fact

      1) An error in the identity of the NCP or

      2) An error in the amount of current support or past due support or,

   b. Whether the funds to be held are exempt from garnishment by law

5. Administrative appeals requests must be made in writing.

   a. If a party verbally indicates that he or she wishes to appeal an action, Division staff and Customer Service Center staff notify the party that he or she must submit a written appeal

Table of Contents

request within the appropriate timeframe for the given action. If requested, provide the address for the Division of Appeals and Fair Hearings and Civil Rights.

   b. If the last day of an appeal period falls on a weekend or a holiday, the appellant has until close of business on the next business day to appeal.

   c. Use the postmark date on the envelope to determine the date of the appeal request.

6. Immediately forward any written appeal requests received in the District Office to the Department's Division of Appeals and Fair Hearings and Civil Rights.

7. The Hearing Officer denies appeals requests if the appellant gives an appeal reason other than those allowed by law or regulation or if the appeal request is invalid.

8. Either party may withdraw his or her administrative appeal request at any time while the appeal is pending.

9. The administrative appeal process must be completed before the appellant can file a *de novo* appeal of the Hearing Officer's decision with the court.

10. An appeal to court must be made within 10 or 30 days of receiving the Hearing Officer's decision, depending on the action appealed.

11. An appeal is abandoned if the appellant fails to appear and does not contact the Hearing Officer to reschedule prior to the date and time of the hearing.

   a. The Hearing Officer generates and sends an *Administrative Appeal Ruling* to the appellant by certified mail, return receipt requested when the appeal request is abandoned. A copy is sent to the District Office at the same time.

   b. If the appellant contacts the Hearing Officer after the *Administrative Appeal Ruling* is issued and gives a valid reason for not appearing, the Hearing Officer may schedule another hearing.

12. Once the Hearing Officer generates the *Administrative Appeal Ruling* notifying the appellant that the appeal request is abandoned, and no notice is received of a rescheduled hearing, the Specialist proceeds with the planned action.

(08/2017)

# 10.2 Administrative Hearings

## A. Overview (04/2017)

1. Hearing Officers from the Department's Division of Appeals and Fair Hearings and Civil Rights schedule hearings for the Division's administrative appeals.

2. Administrative hearings are conducted either by telephone or face-to-face.

3. Face-to-face hearings are conducted in the District Office where the CP resides unless the NCP requests another location.

4. The appellant and the Specialist or the Field Supervisor attend the hearing.

5. Other individuals may also attend the hearing.

   a. The other party

   b. Legal Counsel or authorized representatives

   c. The District Office's Legal Counsel

   d. Any witnesses and

   e. Other persons at the Hearing Officer's discretion

6. A continuance of the hearing may be granted at the Hearing Officer's discretion.

7. The appellant can make a request for a continuance by telephone with a follow-up in writing.

8. The appellant receives the Hearing Officer's decision within 45 calendar days of the date of the appeal request; a copy is sent to the District Office at the same time. For face-to-face hearings, the Hearing Officer can serve the appellant at the hearing by *Waiver of Formal Process of Service*.

9. If the Hearing Officer enters a decision that changes an amount or other factor, proceed with actions based on the Hearing Officer's modifications.

10. For appeals of an administrative enforcement action on an intergovernmental case when Virginia is the responding state, the Hearing Officer hears the case.

    a. Once the hearing is held, the Hearing Officer sends the *Administrative Hearing Decision (Out-of-State)* to the parties.

    b. If either party disagrees with the decision, he or she sends written notice to the Manager of the Division of Appeals and Fair Hearings and Civil Rights.

    c. The Manager notifies the appropriate District Office to register the out-of-state order for the purpose of judicial appeal.

Table of Contents

d. Within 5 working days of receipt of written notice of the appeal request of the Hearing Officer's decision to court, the Specialist

1) Prepares the *Request for Registration of Foreign Support Order*

2) Attaches any court forms necessary to take enforcement action

3) Forwards the packet for review for court referral according to District Office requirements and

4) Sends the approved packet to the appropriate Juvenile and Domestic Relations (JDR) Court

e. The JDR court notifies the parties when the order has been registered.

## B. Administrative Support Order (04/2023)

1. Either party may appeal any of the establishment provisions of the *Administrative Support Order (ASO)*.

2. Both parties have 10 calendar days from the service date to request an administrative appeal.

a. Upon receipt of the proof of service on the NCP, a copy of the served *ASO* is mailed the same day to the CP.

b. The CP has 10 calendar days from the date of receipt of a copy of the served *ASO* by first class mail to request an appeal. Allow at least 5 calendar days for mail delivery. A request for administrative appeal received after this time should be considered if the CP can show that the request was made within 10 calendar days of receipt, regardless of mailing time.

3. Within 10 calendar days of receipt of the Hearing Officer's decision, either party may appeal to the Juvenile and Domestic Relations (JDR) District Court in the locality he or she lives in except

a. The appeal is where the CP resides if the NCP lives out of state

b. The appeal is where the property of the NCP is located if both parties live out of state or

c. If there is more than one appropriate choice under the above criteria, the NCP determines the appeal location.

(04/2017) (08/2017) (01/2020)

Case 26-01060-mkn    Doc 18-1    Entered 06/09/26 13:43:51    Page 51 of 86

Table of Contents

### C. Federal Tax Intercept - Offset Program Notices (07/2018)

1. Intrastate Cases

   When Virginia is the certifying state with a Virginia order

   a. The NCP has 30 calendar days from the date of the *Pre-Offset Notice* to appeal the action.

   b. The NCP has 30 calendar days from the date of the *FMS Offset Notice* to appeal the action.

2. Intergovernmental Cases

   When Virginia is the certifying state for another state's order or another state is the certifying state with a Virginia order

   a. When Virginia is the certifying state and the NCP requests an administrative appeal hearing in Virginia, use the same procedures indicated in 1 above.

   b. If the complaint cannot be resolved and the order was not entered in Virginia, the NCP may request an administrative review in the state that entered the order.

      1) Within 10 calendar days, generate the *Child Support Enforcement Transmittal #2* and select block #17- Administrative review for contested debt certification in the federal collection and enforcement program.  Attach the NCP's request for an administrative review.

      2) If Virginia does not have an intergovernmental case with the state that entered the order, generate the *Child Support Transmittal #3- Request for Assistance or Discovery* and select block #5 Assistance with administrative review.  Include

         a) A copy of all orders relevant to the case,

         b) A copy of the payment record. If there is no payment record, provide an affidavit signed by the CP attesting to the amount of arrearages owed,

         c) The CP's address if there is not an FVI on the case and

         d) A copy of the NCP's request for an administrative review.

   c. The state that entered the order is responsible for

      1) Notifying the NCP and, in NTANF cases, the CP of the date and time of the administrative review

      2) Conducting the administrative review and

Table of Contents

3) Issuing a decision within 45 calendar days of receiving the administrative review request and required information from the certifying state.

d. If the administrative review held in the other state with the order results in a deletion of, or decrease in, the amount certified for offset, the state with the order

1) Notifies OCSS within 10 working days of the change in the amount to be certified and

2) Includes the information required for submitting a case for offset.

e. OCSS notifies the submitting state of any modifications or deletions that result from the administrative appeal conducted by the state with the order.

f. When the administrative review takes place after the offset has already occurred, the state that issued the order promptly notifies the certifying state of its decision. The certifying state is, without exception, bound by the decision of the state with the order.

g. If the decision resolved the complaint in favor of the NCP and a refund is necessary, the certifying state issues the refund within 30 calendar days.

h. When another state certifies the NCP with a Virginia order, tell the NCP to mail his or her administrative review request to the certifying state.

3. The NCP may appeal the Hearing Officer's decision to circuit court within 30 calendar days from the date of the Hearing Officer's decision.

(04/2013) (04/2017)

## D. Passport Denial (08/2017)

1. Passport Denial appeals are based on mistake of fact.

2. The NCP has 30 days from the date of the *Pre-Offset Notice* to request an administrative appeal.

3. The NCP may appeal the Hearing Officer's decision to circuit court within 30 calendar days from the date of the Hearing Officer's decision.

(04/2017)

## E. Order to Withhold (05/2018)

1. The NCP can appeal the *Order to Withhold* (the *OW* and includes *Order to Withhold-Insurance Assets*) based on mistake of fact or claim that the property is exempt. The joint

Table of Contents

account holder can appeal the *OW* based on whether the NCP has an interest in the joint account.

2. The NCP has 10 calendar days after service of the *OW* to request an administrative appeal. The joint account holder also has 10 calendar days after service of the *OW* to request an administrative appeal.

3. If the *OW* was issued as a limited services request from another state, refer to Central Registry Responsibilities.

4. The NCP may appeal the Hearing Officer's decision to the Juvenile and Domestic Relations District Court within 10 calendar days of the date of receipt of the decision.

5. If the Hearing Officer rules the NCP has an interest in the joint account, the Division files a petition to the appropriate court to determine how much of the account belongs to the NCP.

(08/2017)

## F. State Income Tax and Lottery Winnings Intercept (05/2024)

1. State Income Tax Offset and Lottery Winnings Intercept appeals are based on mistake of fact.

2. The NCP has 30 calendar days from the date of the *State Income Tax/ Lottery Winnings/ Vendor Payment Intercept Notification* to request an administrative appeal.

3. The NCP may appeal the Hearing Officer's decision to Circuit Court within 30 calendar days of the date of receipt of the decision.

(04/2017)

## G. Vendor Payment Intercept (05/2024)

1. The Division may intercept a payment due to a vendor of products or services to a state agency when the vendor is an NCP with child support arrearages.

2. Vendor payment intercept appeals are based on

   a. The amount of the debt claimed is incorrect

   b. No arrearages are owed or

   c. The payment is ineligible for intercept

3. The NCP has 30 calendar days from the date of mailing the *State Income Tax/ Lottery Winnings/ Vendor Payment Intercept Notification* to request an administrative appeal.

4. The NCP may appeal the Hearing Officer's decision to the Circuit Court within 30 calendar days of receipt of the decision.

5. The appeal is filed in the locality where the NCP lives. If the NCP does not reside in Virginia, the appeal is filed in the locality of the appropriate District Office.

(08/2017)

## H. Income Withholding for Support (08/2017)

1. *Income Withholding for Support* (IWO) appeals are based on mistake of fact.

2. The appeal must be filed within 10 calendar days beginning the day after the service of the *IWO* on the employer.

3. The NCP may file appeal the Hearing Officer's decision to the Juvenile and Domestic Relations District Court within 10 calendar days of receipt of the decision.

(03/2016)

## I. Consumer Reporting Agencies (07/2017)

1. Consumer reporting agency information appeals are based on mistake of fact.

2. The appeal must be filed within 10 calendar days from the date he or she receives notice of the result of the administrative review.

3. The NCP may file appeal the Hearing Officer's decision to the Juvenile and Domestic Relations District Court within 10 calendar days of receipt of the decision.

## J. Responsibilities of the Hearing Officer (08/2017)

1. Document Case Events when an appeal request is received.

2. Determine if the appeal request is valid.

3. Generate the *Administrative Appeal Ruling* to the appellant when the request is not valid.

4. Schedule an administrative hearing if the appeal request is valid.

Table of Contents

5. Generate and send the *Notice of DCSE Appeal Hearing* to the NCP and CP within 10 calendar days from the date of the valid appeal request.

6. Grant or deny a request for a continuance of a hearing and notify the District Office, the NCP, the CP and Legal Counsel (if appropriate), of the continuance, if granted.

7. Acknowledge a written request from an appellant to withdraw the appeal. The acknowledgment is sent by certified mail, return receipt requested, to both parties. A copy is also sent to the District Office and to Legal Counsel, if applicable.

8. Update Case Events.

9. The automated system generates a worklist item to the Specialist and the Hearing Officer the day before the hearing as a reminder of the hearing date and time.

10. Conduct the administrative appeal hearing.

   a. Record the testimony given at the hearing.

   b. Identify all parties present at the hearing.

   c. Inform all parties of the hearing's purpose, the procedures to be used, and how the decision will be made.

   d. Inform the appellant and his or her representative, if any, and the Division staff of their right to

      1) Examine all documents and records presented

      2) Present the case

      3) Bring witnesses

      4) Establish relevant facts and present arguments

      5) Defend or contest testimony or evidence presented and

      6) Cross-examine opposing witnesses.

         a) Only Legal Counsel can cross-examine witnesses on behalf of the Division.

         b) Division staff can request that the Hearing Officer ask certain questions if the appellant is not represented by counsel. Division staff may question the appellant's attorney directly.

         c) The appellant or his or her counsel can cross-examine the Division's staff.

# EXHIBIT - J

**NOTE ON DOCUMENT LENGTH**: For the sake of brevity and to reduce the volume of the record, the attached exhibits contain only the relevant excerpts of the larger documents. Full versions of these records are available and will be produced upon request.

# LeBar InfoTech

Digital Infrastructure | FinTech | Compliance

**LeBar InfoTech Turkey A.Ş.**
Altinova Sinah, Mah. Sevil Sk No. 3, Kapi 17
Antalya, Turkey

**Ref. No.:** LIT-2026-0225-RAM
**Date:** February 14, 2026

**Addressee:** Mr. Raj Marni
**Subject:** Patent Licensing and Consulting Agreement —
Confirmation of Terms

## OFFICIAL ENGAGEMENT CONFIRMATION LETTER

*and Notice of Absolute Cancellation Deadline*

Dear Mr. Marni:

LeBar InfoTech Turkey A.Ş. (hereinafter "the Company") is pleased to issue this official engagement confirmation letter setting forth the material terms of the executed Patent Licensing and Consulting Agreement ("the Agreement") entered into between the Company and **Mr. Raj Marni**, engaged as **Chief Architect and IT Consultant**, currently residing in Irvine, California, United States of America.

This letter confirms that the Agreement is fully executed, currently in force, and sets out the terms under which Mr. Marni is engaged. The Company looks forward to Mr. Marni's on-site commencement and is prepared to be contacted for independent verification of any matter stated herein.

## 1. CONFIRMATION OF THE EXECUTED AGREEMENT

The Agreement between the Company and Mr. Marni has been fully executed and is currently in force. It governs the exclusive licensing of Mr. Marni's proprietary financial technology intellectual property portfolio to LeBar InfoTech Turkey, and the provision by Mr. Marni of on-site implementation, architecture, and consulting services within the MENAT (Middle East, North Africa, and Turkey) region.

The material commercial terms of the Agreement are set out below:

| | |
|---|---|
| **Consultant Role** | Chief Architect / IT Consultant |
| **Patent License Fee** | USD $2,000.00 per patent, per day of active on-site implementation |
| **Number of Patents Licensed** | Five (5) U.S. provisional patent applications:<br>App. No. 63/852,760 \| App. No. 63/853,171 \| App. No. 63/853,409 |

| | App. No. 63/854,325 | App. No. 63/854,464<br>(Total license income: USD $10,000.00 per day at full capacity) |
|---|---|
| **Consulting Hourly Rate** | USD $225.00 per hour — no cap on billable hours |
| **Physical Presence Requirement** | On-site physical presence in the MENAT region is a mandatory precondition for all financial compensation. Remote or virtual participation does not trigger licensing fees or consulting compensation. |
| **Agreement Status as of This Date** | Fully executed. Active and in good standing, subject to the deadline set forth in Section 3 of this letter. |

## 2. STRATEGIC CONTEXT AND URGENCY

Mr. Marni's portfolio of five provisional patent applications encompasses proprietary technologies in distributed financial network compliance, digital asset infrastructure, token traceability, and cryptographic auditability. These technologies directly address regulatory obligations now mandated by the Guiding and Establishing National Innovation for U.S. Stablecoins Act (the GENIUS Act), signed into federal law on July 18, 2025.

The passage of the GENIUS Act has created a narrow and highly competitive implementation window for compliant stablecoin and digital currency infrastructure across the MENAT market. LeBar InfoTech Turkey has identified Mr. Marni's specific intellectual property as the optimal solution for its client obligations during this window. The Company has committed significant internal resources, planning, and third-party client commitments in reliance on Mr. Marni's participation commencing on or before the deadline stated in Section 3.

## 3. ABSOLUTE DEADLINE FOR COMMENCEMENT — APRIL 15, 2026

We draw your attention, in the strongest possible terms, to the following contractual provision:

**PERMANENT CANCELLATION CLAUSE:** Mr. Raj Marni must be physically present, on-site, and operationally commenced in the MENAT region on or before April 15, 2026. This deadline is absolute, non-negotiable, and non-waivable. Failure to meet this condition — regardless of cause — will result in **the immediate, permanent, and irrevocable cancellation of the Agreement**. No extension, reinstatement, or substitute arrangement is possible after this date.

The Company expressly confirms the following for your reference and records:

(a) The April 15, 2026, deadline was established at the time of contracting and reflects the Company's binding obligations to its own clients and the competitive constraints of the post-GENIUS Act implementation window. It is not subject to renegotiation under any circumstances.

(b) No oral or written modification extending this deadline has been granted or agreed to, and the Company is not in a position to offer any such modification.

(c) If Mr. Marni fails to appear on-site by April 15, 2026, for any reason — including but not limited to legal restrictions, travel impediments, passport limitations, court orders, incarceration, or health circumstances — the Agreement will be permanently cancelled and the Company will procure alternative solutions. The opportunity will not be available to Mr. Marni in any subsequent form.

(d) The projected income of USD $10,000 per day in licensing fees and USD $225 per hour in consulting fees is entirely contingent upon Mr. Marni's physical on-site presence. These revenue streams are structurally impossible to generate in any remote or virtual capacity. They cease to exist in their entirety if the Agreement is cancelled.

## 4.  NEXT STEPS AND COMMENCEMENT REQUIREMENTS

In order to activate the Agreement and commence the engagement, we wish to confirm the following steps and expectations with you directly:

**First —**  Your provisional patent portfolio and the executed Agreement represent verified, documented assets providing substantial and real income-generating capacity. We are fully prepared to confirm the terms and standing of this Agreement to any party requiring independent verification.

**Second —**  Your physical presence on-site in the MENAT region on or before April 15, 2026 is the sole and mandatory precondition for all compensation under this Agreement. We strongly encourage you to take all steps necessary to ensure your travel and arrival by that date without exception.

**Third —**  Should you require any additional documentation, written confirmation of terms, or a direct call with our authorized signatory for any purpose — including for presentation to any legal, financial, or government body — please do not hesitate to contact us using the details provided in Section 5 below.

## 5.  CONTACT FOR VERIFICATION

Should you or any party require independent verification of the contents of this letter or the terms of the Agreement, please contact the undersigned authorized signatory directly:

| | |
|---|---|
| **Full Name** | Vadym Kyluchevsky<br>AtliNova Sinah Mah. Seveil Sk No;3, Kapi 17,<br>Antalya, Turkey |
| **Designation** | Authorized Signatory, LeBar InfoTech Turkey A.Ş. |
| **Office Location** | Antalya, Turkey / Dubai, United Arab Emirates |

We look forward to your commencement on-site and to a productive and successful engagement. Please do not hesitate to reach out with any questions regarding the terms of the Agreement or your onboarding logistics.

We are committed to this engagement and to Mr. Marni's success in the MENAT region.

Sincerely,

*Vadym Kyluchevsky*

**Vadym Kyluchevsky**
Authorized Signatory
**LeBar InfoTech Turkey A.Ş.**
Antalya, Turkey | Dubai, UAE

Date:        14/02/2026

---

*This letter constitutes an official communication of LeBar InfoTech Turkey A.Ş. and may be relied upon as such by any court of competent jurisdiction.*

# EXHIBIT - K

**NOTE ON DOCUMENT LENGTH**: For the sake of brevity and to reduce the volume of the record, the attached exhibits contain only the relevant excerpts of the larger documents. Full versions of these records are available and will be produced upon request.

**Information to identify the case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **RAJ MARNI** | | Social Security number or ITIN **xxx-xx-3967** |
| | First Name    Middle Name    Last Name | | EIN  _ _ - _ _ _ _ _ _ _ |
| Debtor 2 (Spouse, if filing) | | | Social Security number or ITIN  _ _ _ _ |
| | First Name    Middle Name    Last Name | | EIN  _ _ - _ _ _ _ _ _ _ |

United States Bankruptcy Court   **District of Nevada**

Case number:  **20-13238-mkn**

12/15

# Order of Discharge

**IT IS ORDERED:** A discharge under 11 U.S.C. § 727 is granted to:

RAJ MARNI

12/29/20

**By the court:**    Mary A. Schott
Clerk of Court

## Explanation of Bankruptcy Discharge in a Chapter 7 Case

This order does not close or dismiss the case, and it does not determine how much money, if any, the trustee will pay creditors.

**Creditors cannot collect discharged debts**

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

This order does not prevent debtors from paying any debt voluntarily or from paying reaffirmed debts according to the reaffirmation agreement. 11 U.S.C. § 524(c), (f).

**Most debts are discharged**

Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts owed before the debtors' bankruptcy case was filed.

Also, if this case began under a different chapter of the Bankruptcy Code and was later converted to chapter 7, debts owed before the conversion are discharged.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

**For more information, see page 2 >**

Official Form 318                Order of Discharge                page 1

**Some debts are not discharged**

Examples of debts that are not discharged are:

- ◆ debts that are domestic support obligations;

- ◆ debts for most student loans;

- ◆ debts for most taxes;

- ◆ debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case;

- ◆ debts for most fines, penalties, forfeitures, or criminal restitution obligations;

- ◆ some debts which the debtors did not properly list;

- ◆ debts for certain types of loans owed to pension, profit sharing, stock bonus, or retirement plans; and

- ◆ debts for death or personal injury caused by operating a vehicle while intoxicated.

Also, debts covered by a valid reaffirmation agreement are not discharged.

In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed a loan.

---

**This information is only a general summary of the bankruptcy discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.**

---

Official Form 318        **Order of Discharge**        page 2

# EXHIBIT - L

**NOTE ON DOCUMENT LENGTH**: For the sake of brevity and to reduce the volume of the record, the attached exhibits contain only the relevant excerpts of the larger documents. Full versions of these records are available and will be produced upon request.

| Fill in this information to identify your case: | | |
|---|---|---|
| United States Bankruptcy Court for the: | | |
| Eastern District of Virginia | ☑ | |
| Case number (if known): _____ | Chapter you are filing under: | |

Chapter you are filing under:
☑ Chapter 7
☐ Chapter 11
☐ Chapter 12
☐ Chapter 13

**FILED**

2019 FEB 26 P 3: 04

CLERK
US BANKRUPTCY COURT
ALEXANDRIA DIVISION

☐ Check if this is an amended filing

## Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy    12/17

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Identify Yourself

| | | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|---|
| 1. | **Your full name** Write the name that is on your government-issued picture identification (for example, your driver's license or passport). Bring your picture identification to your meeting with the trustee. | Ksenija<br>First name<br><br>Middle name<br>Marni<br>Last name<br><br>Suffix (Sr., Jr., II, III) | First name<br><br>Middle name<br><br>Last name<br><br>Suffix (Sr., Jr., II, III) |
| 2. | **All other names you have used in the last 8 years** Include your married or maiden names. | Kasey<br>First name<br><br>Middle name<br>Marni<br>Last name<br><br>Ksenija<br>First name<br>T.<br>Middle name<br>Marni<br>Last name | First name<br><br>Middle name<br><br>Last name<br><br>First name<br><br>Middle name<br><br>Last name |
| 3. | **Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx – xx – 7 5 0 0<br>OR<br>9 xx – xx – ___ ___ ___ ___ | xxx – xx – ___ ___ ___ ___<br>OR<br>9 xx – xx – ___ ___ ___ ___ |

Debtor 1  **Ksenija**              **Marni**                              Case number (if known)_____
          First Name   Middle Name      Last Name

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
    26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

    ☑ No
    ☐ Yes .................................. Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

    _____    $_____0.00

    _____    $_____

    _____    $_____

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

    ☑ No
    ☐ Yes. Give specific
      information about them....
    [                                                    ]    $_____0.00

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
    *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

    ☐ No
    ☑ Yes. Give specific
      information about them....
    [ Internet domain: lifestyleassociates.com          ]    $_____1.00

27. **Licenses, franchises, and other general intangibles**
    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

    ☐ No
    ☑ Yes. Give specific
      information about them....
    [ Real Estate Broker license                         ]    $_____1.00

**Money or property owed to you?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

28. **Tax refunds owed to you**

    ☐ No
    ☑ Yes. Give specific information
      about them, including whether
      you already filed the returns
      and the tax years. .......................
    [ Draft 2018 tax return, not yet filed              ]    Federal:    $_____447.00
    [ Refund (based on EIC): $447                        ]    State:      $_____
                                                              Local:      $_____

29. **Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

    ☐ No
    ☑ Yes. Give specific information.............
    [ Per divorce, court ordered the support    ]    Alimony:              $_____118,227.00
    [ payments. Ex-spouse was incarcerated, has ]    Maintenance:          $_____38,933.00
    [ no job. He hasn't paid support payments for ]  Support:              $_____52,433.00
    [ 28 months.                                 ]    Divorce settlement:   $_____12,577.00
                                                       Property settlement:  $_____

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation,
    Social Security benefits; unpaid loans you made to someone else

    ☑ No
    ☐ Yes. Give specific information..............
    [                                                    ]    $_____0.00

Official Form 106A/B                    Schedule A/B: Property                                    page 7

| Debtor 1 | Ksenija | | Marni | Case number (if known)_____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

**Part 2:**  **Additional Page**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption* | Specific laws that allow exemption |
|---|---|---|---|
| Brief description: Wedding & Eng ring<br>Line from Schedule A/B: 12 | $ 1,200.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | CV § 34-26(1)(a) |
| Brief description: Retirement accounts<br>Line from Schedule A/B: 21 | $ 12,089.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522, CV 34-34 VA law exemption per Federal law |
| Brief description: Tax Refund  EIC<br>Line from Schedule A/B: 28 | $ 447.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | CV § 34-26 (9)<br> §32 of IRS Code of 1986 amended |
| Brief description: Unpaid Famly Supprt<br>Line from Schedule A/B: 29 | $ 170,660.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | CV § 34-26 (10) |
| Brief description: Equipment for blz<br>Line from Schedule A/B: 39 | $ 500.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | CV § 34-26 (7) |
| Brief description: Household Furnishinc<br>Line from Schedule A/B: 6 | $ 1,200.00 | ☑ $ 1,200.00<br>☐ 100% of fair market value, up to any applicable statutory limit | CV § 34-26(4)(a) |
| Brief description: Firearms<br>Line from Schedule A/B: 10 | $ 800.00 | ☑ $ 800.00<br>☐ 100% of fair market value, up to any applicable statutory limit | CV § 34-26(4)(b) |
| Brief description: Car 2007 MB SL550<br>Line from Schedule A/B: 3 | $ 1.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | CV § 34-26(8) |
| Brief description: _____<br>Line from Schedule A/B: _____ | $ _____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | _____ |
| Brief description: _____<br>Line from Schedule A/B: _____ | $ _____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | _____ |
| Brief description: _____<br>Line from Schedule A/B: _____ | $ _____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | _____ |
| Brief description: _____<br>Line from Schedule A/B: _____ | $ _____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | _____ |

Official Form 106C          Schedule C: The Property You Claim as Exempt          page 2 of 2

| Debtor 1 | Ksenija | | Marni | | Case number (if known) |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| **Part 2:** | **Your NONPRIORITY Unsecured Claims — Continuation Page** |
|---|---|

After listing any entries on this page, number them beginning with 4.4, followed by 4.5, and so forth.

**Total claim**

### 4.7

**Discover Financial Services**
Nonpriority Creditor's Name

PO BOX 71084
Number     Street

Charlotte                NC        28272
City                     State     ZIP Code

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☑ No
☐ Yes

Last 4 digits of account number  6  5  6  9          $ 4,322.00

When was the debt incurred?    07/01/2016

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  **Credit Card**

---

### 4.8

**Mohela/Dept of Ed**
Nonpriority Creditor's Name

633 Spirit Dr
Number     Street

Chesterfield             MO        63005
City                     State     ZIP Code

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☑ No
☐ Yes

Last 4 digits of account number  2  1  0  7          $ 37,421.00

When was the debt incurred?    11/15/2018

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☑ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify_____

---

### 4.9

**Navy FCU**
Nonpriority Creditor's Name

PO Box 3500
Number     Street

Merrifield               VA        22119
City                     State     ZIP Code

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☑ No
☐ Yes

Last 4 digits of account number  2  7  4  2          $ 17,541.00

When was the debt incurred?    08/01/2016

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  **Credit Card**

---

Official Form 106E/F          Schedule E/F: Creditors Who Have Unsecured Claims          page 5 of 15

Debtor 1 **Ksenija** **Marni**
First Name | Middle Name | Last Name | Case number (if known) _____

## Part 2: Your NONPRIORITY Unsecured Claims — Continuation Page

After listing any entries on this page, number them beginning with 4.4, followed by 4.5, and so forth.

| | Total claim |

### 4.13 Prosper Marketplace
Nonpriority Creditor's Name

221 Main Street, Suite 300
Number    Street

San Francisco                CA    94105
City                      State   ZIP Code

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☑ No
☐ Yes

Last 4 digits of account number  4  0  4  5      $ 5,455.00

When was the debt incurred?  01/01/2016

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify **Consumer Loan**

---

### 4.14 Synchrony/Value City
Nonpriority Creditor's Name

PO Box 960061
Number    Street

Orlando                      FL    32896
City                      State   ZIP Code

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☑ No
☐ Yes

Last 4 digits of account number  9  7  0  3      $ 1,404.00

When was the debt incurred?  07/01/2017

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify **Consumer Credit**

---

### 4.15 TD Bank
Nonpriority Creditor's Name

PO Box 100290
Number    Street

Columbia                     SC    29202
City                      State   ZIP Code

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☑ No
☐ Yes

$ 7,154.00

Last 4 digits of account number  7  4  7  2

When was the debt incurred?  01/01/2016

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify _____

---

Official Form 106E/F                Schedule E/F: Creditors Who Have Unsecured Claims                page 7 of 15

Debtor 1    **Ksenija**                    **Marni**
            First Name    Middle Name    Last Name                                    Case number (if known)_____

<table>
<tr><td style="background:black;color:white">Part 2:</td><td>**Your NONPRIORITY Unsecured Claims — Continuation Page**</td><td>**Total claim**</td></tr>
</table>

After listing any entries on this page, number them beginning with 4.4, followed by 4.5, and so forth.

---

| 4.16 | **MarketPlace Loan Trust** | Last 4 digits of account number  8  0  3  8 | $ 14,853.00 |

**MarketPlace Loan Trust**
Nonpriority Creditor's Name

**PO Box 1719**
Number        Street

**Portland**                **OR**    **97207**
City                        State    ZIP Code

Last 4 digits of account number  8  0  3  8

**When was the debt incurred?**    **01/01/2016**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☑ No
☐ Yes

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify **Consumer Loan**

$ 14,853.00

---

| 4.17 | **PayPal Credit** | Last 4 digits of account number  6  9  1  1 | $  929.00 |

**PayPal Credit**
Nonpriority Creditor's Name

**PO Box 71202**
Number        Street

**Charlotte**                **NC**    **28272**
City                        State    ZIP Code

Last 4 digits of account number  6  9  1  1

**When was the debt incurred?**    **4/1/2018**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☑ No
☐ Yes

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify **Consumer Credit**

$  929.00

---

| 4.18 | **PNC Bank** | Last 4 digits of account number  7  8  5  6 | $ 130,000 |

**PNC Bank**
Nonpriority Creditor's Name

**2730 Liberty Ave**
Number        Street

**Pittsburgh**                **PA**    **15222**
City                        State    ZIP Code

Last 4 digits of account number  7  8  5  6

**When was the debt incurred?**    **01/01/2005**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☑ No
☐ Yes

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify **Mortgage/2nd Lien/Short sale**

$ 130,000

---

Official Form 106E/F                    Schedule E/F: Creditors Who Have Unsecured Claims                    page **8** of **15**

# EXHIBIT - M

**NOTE ON DOCUMENT LENGTH**: For the sake of brevity and to reduce the volume of the record, the attached exhibits contain only the relevant excerpts of the larger documents. Full versions of these records are available and will be produced upon request.

 Gmail

Raj Marni <rajmarni@gmail.com>

## Virginia AG Office Mandatory Professional Obligations - Offical Electronic Notice

1 message

Fri, Dec 19, 2025 at 6:56 AM

**Raj Marni** <rajmarni@gmail.com>
To: "Prentice, Anne (VDSS)" <anne.prentice@dss.virginia.gov>
Cc: Christin Georgelas <christin@sglawplc.com>, Megan Houck <megan@sglawplc.com>

Ms. Prentice,

As an Assistant Attorney General representing the Commonwealth of Virginia through the Division of Child Support Enforcement (DCSE), you hold a position of unique ethical responsibility and public trust. I am writing to formally notify you of serious federal law violations and fraud being perpetrated on the Loudoun County Circuit Court in a case in which DCSE has an enforcement interest.

You have already received an email from you with Subject: ANATOMY OF KSENIJA TRDIC BANKRUPTCY FRAUD

This email serves to:

1. **Place you on notice** of bankruptcy fraud and willful violations of federal discharge injunctions under 11 U.S.C. § 524(a)(2);
2. **Inform you of your mandatory reporting obligations** under Virginia Rules of Professional Conduct, Rules 3.3, 3.8, and 8.3(a);

3. **Alert the Attorney General's Office** that the Commonwealth may be unknowingly participating in the collection of discharged bankruptcy debts fraudulently mischaracterized as child support obligations;
4. **Provide you an opportunity** to investigate, correct the record, and fulfill your heightened ethical duties as a government lawyer before I file formal complaints and federal court motions.

**You cannot claim ignorance after receiving this email.**

---

# II. THE FRAUD BEING PERPETRATED

## A. Summary of the Scheme ( FYI: There are many accounts and ONLY two are mentioned here)

In Loudoun County Circuit Court Case No. CL 107389-01/-02, the Plaintiff, **Ksenija Trdic**, represented by **Ms. Georgelas of SG Law PLC**, is attempting to collect approximately **$85,500** for two consumer loans:

1. **Prosper Marketplace** (Account ****4045) - Claiming ~$23,500
2. **Marketplace Loan Trust/Circle Bank** (Account ****8038) - Claiming ~$62,000

**The fraud:** Ms. Trdic **discharged these exact debts in her own Chapter 7 bankruptcy in 2019** (Case No. 19-10603-KHK) and has paid **$0.00** to these creditors since her discharge. She is now seeking to collect "indemnification" from me for debts:

- She no longer legally owes
- She never paid after discharge
- She cannot be required to pay (protected by federal discharge injunction)

This is textbook "double dipping" bankruptcy fraud and unjust enrichment.

## B. The Federal Discharges

**Ksenija Trdic's 2019 Chapter 7 Bankruptcy:**

- **Case Number:** 19-10603-KHK
- **Filed:** February 29, 2019
- **Status:** Discharged 2019
- **Debts Discharged:**
    - Prosper Marketplace (****4045): **$5,455**
    - Marketplace Loan Trust (****8038): **$14,853**
    - **Total discharged: $20,308**

**Legal Effect:** Under 11 U.S.C. § 524(a)(2), upon discharge, Prosper and Circle Bank are **permanently enjoined** from collecting these debts from Ms. Trdic. She legally owes them **$0.00.**

**Raj Marni's 2020 Chapter 7 Bankruptcy:**

- **Case Number:** 20-13238-MKN (District of Nevada)
- **Filed:** 2020 (Chapter 13, converted to Chapter 7 on September 29, 2020)
- **Discharged:** December 2020
- **Debts Discharged:** Hold harmless obligations to Ms. Trdic for the above Prosper and Circle Bank loans

**Legal Effect:** Under 11 U.S.C. § 523(a)(15) and *Lange v. Lange* (discussed below), property settlement debts including hold harmless obligations are dischargeable in Chapter 7. Upon my discharge, Ms. Trdic is **permanently enjoined** under § 524(a)(2) from collecting these debts.

## C. The Fabricated Claims

Despite discharging only **$20,308** in 2019 and paying **$0.00** to creditors, Ms. Trdic is now claiming **$85,500** in 2025—a **321% inflation** of debts she never paid.

**This is mathematically and legally impossible.**

# III. THE CONTROLLING CASE LAW: *LANGE V. LANGE*

*Lange v. Lange*, No. 09-10819 (Bankr. W.D. Tex. Nov. 3, 2010)

**Holding:**

> "Debts listed in the divorce decree are non-dischargeable under 11 U.S.C. § 523(a)(15) **ONLY TO THE EXTENT that the creditor/claimant obtains payment and/or a money judgment against the Plaintiff.** Only then would Plaintiff have a right of indemnification against Defendant that would not be discharged by Defendant's Chapter 7 discharge."

**Application:**

Under *Lange*, a hold harmless obligation only becomes non-dischargeable if the protected spouse:

1. Actually pays the creditor, OR
2. Has a judgment entered against them by the creditor

**Here:**

- Ms. Trdic paid **$0.00** to Prosper or Circle Bank after her 2019 discharge
- No judgments can be entered against her (she's protected by discharge injunction)
- She has suffered **$0.00** in actual damages
- **Therefore, under *Lange*, she has NO non-dischargeable claim**

Any collection attempt is:

- Barred by *Lange*
- Barred by my discharge under § 524(a)(2)

- An attempt to obtain a **$85,500 windfall** for debts she never paid

---

# IV. YOUR MANDATORY PROFESSIONAL OBLIGATIONS

Ms. Prentice, as an Assistant Attorney General, you hold **heightened ethical responsibilities** that exceed those of private counsel. You are not just an advocate—you are a minister of justice representing the Commonwealth of Virginia.

## A. Virginia Rule of Professional Conduct 8.3(a) - Mandatory Reporting

**The Rule:**

> "A lawyer who **knows** that another lawyer has committed a violation of the Rules of Professional Conduct **that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer** in other respects, **shall inform the appropriate professional authority.**"

**Your Obligation:**

You now have **actual knowledge** that Ms. Georgelas (and potentially her client Ms. Trdic) are:

1. **Violating federal discharge injunctions** (11 U.S.C. § 524(a)(2))
2. **Concealing material facts** from the Loudoun County Circuit Court (the bankruptcy discharges)
3. **Pursuing claims barred by controlling case law** (*Lange v. Lange*)
4. **Fabricating damages** ($85,500 claimed vs. $20,308 discharged and $0 paid)
5. **Committing extrinsic fraud** on a Virginia court

**This conduct raises substantial questions about Ms. Georgelas's honesty, trustworthiness, and fitness as a lawyer.**

Under Rule 8.3(a), you **must** report this to the Virginia State Bar. This is not discretionary—it is **mandatory.**

## B. Virginia Rule of Professional Conduct 3.3 - Candor Toward the Tribunal

**The Rule:**

"A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal or **fail to correct a false statement of material fact** or law previously made to the tribunal... (2) **fail to disclose to the tribunal legal authority** in the controlling jurisdiction known to the lawyer to be **directly adverse to the position** of the client...**"

**Your Obligation:**

If you are appearing in the Loudoun County case (representing DCSE), and you now know that:

- Ms. Trdic discharged these debts in 2019
- She paid $0.00 to the creditors
- *Lange v. Lange* bars her claims
- Federal discharge injunctions prohibit collection

**You have an obligation to either:**

1. **Disclose these material facts to the court**, OR
2. **Withdraw from representation** if disclosure would violate client confidentiality

**You cannot remain silent while a Virginia court is being defrauded.**

## C. Virginia Rule of Professional Conduct 3.8 - Special Responsibilities of Government Lawyers

**The Rule:** Government lawyers have heightened ethical obligations because they represent the public interest, not just a client's interest. The commentary to Rule 3.8 emphasizes that prosecutors and government lawyers must "seek justice, not merely prevail."

**Your Obligation:**

As an Assistant Attorney General, you have a duty to:

1. **Ensure DCSE is not being used to collect discharged bankruptcy debts** fraudulently characterized as child support
2. **Investigate whether the debts DCSE is enforcing are legitimate DSOs** or discharged property settlement obligations
3. **Correct any misrepresentations** made to the court about the nature of these debts
4. **Protect the integrity of Virginia's judicial system** from being used to violate federal law

**If DCSE is enforcing collection of these Prosper and Circle Bank debts as "child support arrears," this must be immediately investigated and corrected.**

## D. Duty to Report to the Attorney General's Office

Beyond your duties to the Virginia State Bar and the court, you have an internal obligation to report this matter to your supervisors within the Attorney General's Office.

**Why?**

1. **Federal Law Violations:** Violations of federal bankruptcy discharge injunctions are serious federal crimes (18 U.S.C. § 152, 157)
2. **Commonwealth Integrity:** If DCSE is unknowingly participating in bankruptcy fraud, the Attorney General has an interest in correcting this immediately
3. **Supremacy Clause:** State enforcement actions that violate federal bankruptcy law are void under the Supremacy Clause—the Attorney General's Office should know if Virginia court orders are being entered in violation of federal law
4. **Potential Civil Rights Violations:** Using state court process to collect discharged debts may constitute a civil rights violation under 42 U.S.C. § 1983

# V. CONSEQUENCES OF INACTION

Ms. Prentice, I am providing you this information as a courtesy and out of respect for your position. However, if you fail to fulfill your mandatory reporting and disclosure obligations, you will face:

## A. Bar Disciplinary Proceedings

Failure to report under Rule 8.3(a) is itself an ethical violation subject to discipline by the Virginia State Bar.

## B. Personal Liability

If you continue participating in collection efforts after receiving this notice, you may be held personally liable in federal bankruptcy court for:

- Compensatory damages (emotional distress, attorney's fees)
- Punitive damages (for willful violations)
- Sanctions under *Taggart v. Lorenzen* and *In re McLean*

## C. Professional Reputation Damage

As a government lawyer, your professional reputation depends on integrity and adherence to the law. Knowingly participating in or concealing bankruptcy fraud will irreparably damage your standing.

## D. Federal Court Contempt

The U.S. Bankruptcy Court has jurisdiction to hold any person—including government lawyers—in contempt for willful violations of discharge injunctions. Under *Taggart v. Lorenzen*, 139 S.Ct. 1795 (2019), the standard is whether there is "no

fair ground of doubt as to the wrongfulness of the conduct."

**After this email, there is no fair ground of doubt. You have been placed on notice.**

# VI. THE CRITICAL QUESTIONS YOU MUST INVESTIGATE

As a government lawyer with heightened ethical obligations, you must immediately investigate the following:

## Question 1: What Debts is DCSE Actually Enforcing?

- Are the Prosper (****4045) and Circle Bank (****8038) debts included in DCSE's enforcement action?
- Were these debts characterized to DCSE as "child support" or "spousal support"?
- Did Ms. Trdic disclose to DCSE that she discharged these debts in her 2019 bankruptcy?

## Question 2: Are These Legitimate DSOs or Discharged Property Settlement Debts?

- Under the Separation Agreement, were these "hold harmless" obligations (property settlement) or actual support obligations (DSO)?
- If they are property settlement debts, they were discharged in my 2020 Chapter 7 bankruptcy
- If DCSE is enforcing discharged debts, **the Commonwealth is being used as an instrument of fraud**

## Question 3: Has Ms. Trdic Provided False Information to DCSE?

- Did she represent to DCSE that she is still liable to Prosper and Circle Bank?
- Did she conceal her 2019 bankruptcy discharge from DCSE?
- Did she fabricate the $85,500 in claimed arrearages?

## Question 4: Is the Court Being Misled?

- Has the Loudoun County Circuit Court been informed of the two bankruptcy discharges?
- Has *Lange v. Lange* been disclosed to the court?
- Has the court been told that Ms. Trdic paid $0.00 to these creditors?

**Your duty as a government lawyer requires you to investigate these questions immediately.**

# VII. THE LEGAL FRAMEWORK YOU MUST UNDERSTAND

## A. 11 U.S.C. § 524(a)(2) - The Permanent Discharge Injunction

Upon entry of a bankruptcy discharge, federal law creates a permanent injunction:

"A discharge... operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor..."

**This injunction:**

- Is permanent
- Is self-executing (no motion required)
- Applies to ALL creditors, including ex-spouses
- Violations are punishable by contempt, damages, and sanctions

## B. 11 U.S.C. § 523(a)(15) - Property Settlement Debts

Property settlement debts (including hold harmless obligations) arising from divorce are:

- **Non-dischargeable in Chapter 7 ONLY if they meet certain criteria**

- **Subject to the *Lange* requirement:** Only non-dischargeable to the extent the creditor actually collects from the protected spouse

**Here, Ms. Trdic cannot and will not be collected from (she discharged the debts). Therefore, under *Lange*, my hold harmless obligation was fully dischargeable.**

## C. Supremacy Clause - U.S. Constitution, Article VI

Federal bankruptcy law is supreme over state family law. Any state court order that conflicts with federal bankruptcy discharge is:

- **Void ab initio** (void from the beginning)
- **Unenforceable**
- **Subject to immediate vacation upon proper motion**

**If the Loudoun County Circuit Court enters an order awarding Ms. Trdic money for these discharged debts, that order violates the Supremacy Clause and is void.**

# VIII. WHAT YOU MUST DO IMMEDIATELY

Ms. Prentice, you have **THREE OBLIGATIONS** that must be fulfilled immediately:

## Obligation 1: Investigate DCSE's Enforcement Action (Immediate)

**Action Required:**

- Determine whether the Prosper and Circle Bank debts are included in DCSE's enforcement
- Review Ms. Trdic's representations to DCSE about these debts

- Obtain copies of both bankruptcy discharges (Case No. 19-10603-KHK and 20-13238-MKN)
- Verify whether these debts are DSOs or property settlement obligations

**Deadline:** Within 7 days of receiving this email

## Obligation 2: Report to the Virginia State Bar (Rule 8.3(a))

**Action Required:**

- File a complaint with the Virginia State Bar regarding Ms. Georgelas's conduct
- Include documentation of:
  - The bankruptcy discharges
  - The fabricated damage claims ($85,500 vs. $20,308 discharged, $0 paid)
  - The violation of federal discharge injunctions
  - The concealment of material facts from the court

**Deadline:** Rule 8.3(a) requires reporting upon knowledge—you now have knowledge

## Obligation 3: Disclose to Court or Withdraw (Rule 3.3)

**Action Required:**

If you are appearing in the Loudoun County case, you must:

**Option A:** Disclose to the court:

- The existence of both bankruptcy discharges
- The *Lange v. Lange* case law
- The fact that Ms. Trdic paid $0.00 to creditors
- The federal discharge injunction violations

**Option B:** Withdraw from representation if disclosure would violate confidentiality

**You cannot remain silent while extrinsic fraud is being perpetrated on a Virginia court.**

**Deadline:** Before the next hearing or within 14 days, whichever is sooner

# IX. ADDITIONAL NOTIFICATION TO ATTORNEY GENERAL'S OFFICE

Ms. Prentice, I am separately notifying the Virginia Attorney General's Office of this matter because:

1. **Federal Law Violations:** Bankruptcy fraud (18 U.S.C. § 152, 157) may be occurring
2. **Commonwealth Resources:** DCSE resources may be used to collect discharged debts
3. **Judicial Integrity:** Virginia courts are being used to violate federal law
4. **Civil Rights Concerns:** Collection of discharged debts through state process may violate 42 U.S.C. § 1983

The Attorney General has an interest in ensuring that:

- Virginia courts are not used to perpetrate fraud
- DCSE is not used as an instrument of bankruptcy fraud
- State enforcement actions comply with federal bankruptcy law
- Government lawyers fulfill their heightened ethical obligations

# X. YOUR RESPONSE REQUIRED

You have **SEVEN (7) DAYS** from receipt of this email to provide a written response addressing:

1. **DCSE's Involvement:** Confirm whether DCSE is enforcing collection of the Prosper and Circle Bank debts

2. **Your Investigation:** Describe the steps you have taken to investigate this matter
3. **Your Reporting:** Confirm whether you have filed a complaint with the Virginia State Bar under Rule 8.3(a)
4. **Your Disclosure:** Confirm whether you have disclosed the bankruptcy discharges to the Loudoun County Circuit Court

**Failure to respond or take action will result in:**

- Formal complaint filed against you with the Virginia State Bar
- Notification to the Virginia Attorney General's Office (with request for internal investigation)
- Motion filed in U.S. Bankruptcy Court, District of Nevada, seeking sanctions against all counsel participating in discharge injunction violations
- Potential referral to federal prosecutors for bankruptcy fraud investigation

# XI. CONCLUSION

Ms. Prentice, I understand that you may have been unaware of FULL facts before receiving this email. I am providing you this detailed analysis because I respect your position as a government lawyer and I believe you will fulfill your ethical obligations once you have full knowledge of the situation.

**The facts are undisputed:**

- Ksenija Trdic discharged $20,308 to Prosper and Circle Bank in 2019
- She paid $0.00 to these creditors after discharge
- She is now claiming $85,500 in fabricated damages
- Under *Lange v. Lange*, she has no legally cognizable claim
- Under § 524(a)(2), all collection is federally enjoined
- Ms. Georgelas is concealing these facts from the LC Circuit Court.

**You can no longer claim ignorance.**

As an Assistant Attorney General, you have heightened ethical obligations that require you to:

- Investigate immediately
- Report to the Virginia State Bar
- Disclose to the court or withdraw
- Notify your supervisors

**I prefer to resolve this through your appropriate exercise of your professional duties, but I will not hesitate to pursue every available remedy if the Commonwealth continues to participate in this fraud.**

The integrity of Virginia's judicial system and the supremacy of federal bankruptcy law demand your immediate action.

**Respectfully submitted,**

**Raj Marni, Pro Se**